RICHARD N. MERRIKEN,

*vs.*

DANIEL C. GODWIN, CURTIS S. WATSON, JAMES R. LOFLAND and THOMAS WALLACE.

*Kent, March T.* 1860.

The substitution of a new security for one in which a party became originally bound as surety does not convert him into a principal debtor.

An indorser of a promissory note, after its maturity and his liability on it

had become fixed, joined with the maker of the note in a bond giving further time, at his request. *Held,* that he was surety on the bond and not a principal.

The surety in a bond, upon tender of the debt, is entitled under the statute to an assignment of the bond, if demanded; and a refusal to make such assignment is a discharge of the surety *per se,* irrespective of the question whether, in consequence of such refusal, the surety has sustained injury.

The fact that an inequitable use might be made of the security assigned, as against the creditor, does not absolve him from making it, nor prevent the refusal of it from operating to discharge the surety. He should assign the security and afterward resist the inequitable use of it.

*Quere :*   What would be the effect of proof that the assignment was sought *for the purpose* of making an inequitable use of it?

Tender of payment to one of several creditors and a demand from him of an assignment of the security, although the security may not be in his possession, binds all the obligees, and his refusal is equivalent to the refusal of all.

To a charge in the bill that the complainant was surety in a bond, and as such entitled, on payment, to an assignment of the bond, it is not a responsive answer to allege that he is not entitled to the equity of a surety because by an agreement made at the time of giving the bond he was precluded from the protection now sought by the assignment. Such a defence must be proved *aliunde.*

BILL TO RESTRAIN THE COLLECTION OF A JUDGMENT.— The bill alleged that the complainant became bound, as the surety of Richard Chambers, in a judgment bond to the defendants, dated Oct. 1st, 1856, for the debt of $300.00, payable on the 1st of November then next; that the bond was given in part of the purchase money of a printing press which the defendants had sold to Chambers for $790.35; that for the balance of the purchase money, $490.35, Chambers gave to the defendants his bond, without surety, on which last bond a judgment was entered in the Superior Court for Kent County, on the 9th of June, 1856, and a *fieri facias* issued, returnable to the Oct. Term following, and levied upon the printing press and fixtures. A *venditioni exponas* was issued, April 1st, 1857, and return-

ed to the April Term, 1857, " *tarde venit.*" No further writ was issued to the Oct. Term, 1857, nor until the 20th of January, 1858, when an *alias vend. exp.* was issued to the April Term, 1858, and returned, " stayed." On the 10th of June, 1858, an *alias fi. fa.* was issued, under which a new levy was made upon the same goods before levied on, viz : the printing press and fixtures, and also, as the bill alleged, upon some other materials which Chambers had added to his stock. On the 15th of June, 1858 a *pluries vend. exp.* was issued to Oct. Term, 1858, which had not been returned. Under these writs the printing press and fixtures had been sold, and the proceeds were held by the Sheriff. Chambers had no other property.

The complainant finding that the defendants had by the failure to continue their execution process from term to term, as well as by lapse of time, lost their priority of lien, under the judgment for $490.35, under the original levy, as against any subsequent execution creditor, desired to pay off and obtain an assignment of the $300 bond, in which he was surety, so that he might enter a judgment on that bond, and by a levy on the printing press, fixtures, &c., secure himself. The bill alleged that he had, at sundry times between the 15th and 26th of June, 1858, endeavored to pay the bond, and on the 28th of June, not being able to find the other defendants, he had made a legal tender of the money to Curtis S. Watson, one of the obligees, demanding an assignment of the bond; that Watson refused to receive the money or make the assignment ; that under such assignment the complainant could have protected himself in his suretyship by a levy upon the printing press, fixtures, &c. The bill alleged that a judgment had been entered against the complainant on the bond for $300.00, and a *fieri facias* issued, which was now pending. *Prayer*, for an injunction.

The answers of the defendants alleged that the $300.00

for which the bond of Chambers and the complainant was given, was originally secured by Chambers' promissory note, at ninety days, indorsed by the complainant, which note matured and would have been protested, the parties being unable to pay, but that, at the complainant's request, it was substituted by the judgment bond; and the answers insisted that the complainant, having been fixed with his liability upon the. note for which the bond was given, stood in the bond as a principal and not as surety. The answers further alleged that at the taking of the promissory note and also at the substitution therefor of the judgment bond, it was expressly understood and agreed between the parties, that the defendants should have, under their judgment on Chambers' bond for $490.35, a pri - ority of lien, by execution and levy on the printing press and fixtures; and the answers denied that any goods were sold under the *alias* levy which were not covered by the first levy; or, at least, any more than were applicable to rent.

The answers admitted that the complainant, at sundry times, expressed a wish to pay off the bond in which he was bound, and take an assignment; but they denied any tender of the money and demand for the assignment, as to any of the defendants except Watson, who admitted the interview alleged in the bill to have taken place between him and the complainant on the 28th of June, but stated that he had not then the bond, and never had it, and could not make the assignment; that he referred the complainant to the defendant, Wallace, who held possession of the bond.   The defendants all denied any purpose to prevent the complainant from paying the bond, or any refusal to receive the money and make the assignment. The defendants denied that the complainant was entitled to an assignment, being as before stated not a surety on the bond, which was given in satisfaction for his previously fixed liability : also, the defendants insisted that the complainant

was precluded by his express agreement from using the bond, had it been assigned, to defeat the levy of the defendants under their other bond : also, the defendants further insisted that the complainant had suffered no prejudice from the want of the assignment, since, before it was demanded, the defendants had renewed their lien, under the judgment for $490.35, by a new levy on an *alias fieri facias* under that judgment, which would have been effectual against any remedy of the complainant under such assignment of the $300 bond.

. Depositions were taken at large on both sides. The material points of the testimony are stated in the opinion of the Chancellor.

The cause came before the Chancellor at the March T. 1860, for a hearing upon the bill, answers, exhibits and depositions.

*E. Ridgely* and *N. B. Smithers,* for the complainant.

The complainant's liability in the bond is only as surety. The consideration for the note was a printing press sold to Chambers. It is undisputed that he was surety on the note. The bond was a substituted security for the same debt, and it did not change complainant's relation to it. 3 *Barb. N. Y. Rep.* 314; 11 *ibid* 159.

As surety, the complainant was entitled to an assignment of the bond upon payment or tender of the debt. This was his right on general, equitable principles, further secured and enforced by the statute. *Rev. Code,* 186.

Then, did he tender the amount of the debt and demand an assignment; and was it refused? That is the decisive question. It is in proof that he called upon all the obligees successively. First, he asks Godwin, who was Register of Wills in Dover, to bring up the bond, which the

latter neglects to do. Then he goes to Milford and calls on Wallace, who calculates the amount due on the bond, but tells complainant he cannot have an assignment because Godwin is out of town; then he finds Lofland, who refuses an assignment unless it is made conditional. He then waits in Milford from Saturday until Monday; calls again at Wallace's store; finds him gone; then calls on Watson, tenders him the full amount as calculated by Wallace, and demands an assignment, which is refused. What more could the surety do? Next, what was the legal effect of Watson's refusal? It discharged the surety absolutely. Payment or tender to one joint obligee is payment or tender to all. If one can receive payment for all, it is his duty to procure an assignment by all, and his refusal affects all. Its direct operation is to discharge the surety; for it deprives him of his right to be subrogated to the security as a means of protecting himself. 3 *Barbour R.*, 314; 11 *ibid* 159; 7 *Price Exch. R.* 223; *Theob. on Pr. & Sur.* (1 *L. L.*) 123.

The refusal of the assignment was a discharge of the surety *per se.* It is of no consequence whether in point of fact the security would have availed him. The question is whether he was deprived of his right, not how much he was injured in consequence. 2 *Am. Lead. Cas.* 308, 327; *Theob. on Pr. & Sur* (1 *L. L.*) 73; 7 *Price Exch. R.* 223. It is, therefore, wholly immaterial to inquire whether or not the *alias fieri facias* renewed the lien on the printing press.

With respect to the alleged agreement, giving priority to the lien under the first bond, we say that no such agreement is proved; and the answer, in alleging it, is not responsive to the bill. The inquiry of the bill was whether the complainant was a surety. The answer should be yes or no. There was no obligation to answer further: the obligation to answer is the measure of its effect as evidence. Qualifications or matters of defence relied on to avoid the

effect of the answer to the point inquired of are not evidence as being responsive. 12 *G. & J.* 365 ; 15 *Vermt. R.* 93. This rule is more stringent in equity than at law. 3 *Greenl. Ev.* 281.

*G. P. Fisher* and *D. M. Bates*, for the defendants.

Merriken was a principal in the $300 bond and not a surety.   It was given upon a new consideration, viz : the giving further time on a debt in which his liability had become fixed.  For this indulgence he gave the bond ; and, as a consideration for its acceptance and for the indulgence given, he agreed that nothing should be done to impair the security of the other bond.

Again, he made no sufficient tender of the money and demand for an assignment.   To Godwin he only talked about paying : to Wallace, who having the bond might have raised the money and made or procured an assignment, he made no tender whatever, though the amount due was then calculated : to Watson, the offer to pay was on a condition he could not comply with, for he had not the bond and could not assign it.   There was to none of the defendants a *bona fide* tender, nor was there any refusal.   It is questionable even whether there could be a legal tender to one only of several obligees; for all constitute one debtor, and an assignment by all is necessary.  There was no effort, nor even proposal, for a meeting of the defendants to receive the money and make the assignment.

Further, a refusal to assign a bond, even to a surety, does not discharge him *per se.*   Our statute attaches no such consequence to the neglect to assign ; and sufficient force, without this, can be given to its provisions,—as that a surety shall not be bound to pay without an assignment, if he demands it; and that he may go into equity and compel an assignment; and further, that he will be discharged

in equity if, in consequence of the refusal to assign, he is damaged. This is the whole extent of the statutory obligation. There are no adjudged cases on this question, because the right to an assignment of the principal security is not a general right but is conferred by the statute. The general right in equity is to an assignment of collateral securities on payment by a surety of the principal one. Now, no case can be found holding that a refusal or neglect to assign a collateral security to the surety is a discharge *per se*; but such effect is given only on proof of injury, and so far the rule applied in equity to collateral securities sustains our construction of the statute. 2 *White & Tudor's Lead. Cas.* 37. 1 *Sto. Eq. Jur. sec.* 325.

Then, the case is open to the inquiry whether Merriken did sustain any injury from not having the assignment. On this point the proof is conclusive. Chambers had no property but the printing press and fixtures, and these Merriken could not have reached under the bond had it been assigned. For, in the first place, though the old levy had lost its priority, the *alias fi. fa.* was issued and the lien renewed on the 14th of June, before any assignment was sought. But, aside from this, Merriken was bound by his express agreement, on giving the $300 bond, and as part of the consideration for its acceptance, not to interfere with the priority of the other bond, under which the levy had been made. The evidence of this is the sworn answer of all the defendants made in response to the bill and not met by counter proof. The responsiveness of an answer does not consist in its being a categorical reply to a statement in the bill, but in its supplying the discovery sought by the bill. The discovery sought was not barely whether the complainant was a technical surety, but whether he was a surety having the right to an assignment on payment of the debt. That was the charge made by the bill; and the answer meets the charge directly by showing that, in con-

sequence of his agreement,he was not a surety having such right. This answer is not a confession and avoidance. It sets up no new matter distinct from and collateral to the charge of the bill. 2 *Ves. Jr.* 242 : 1 *Cowen R.* 742 : 7 *Ves. Jr.* 567.

HARRINGTON, CHANCELLOR.—The original connection of the complainant with the debt for which the defendants have judgment and execution was that of an indorser and surety to Chambers; and I do not think this character changed by his subsequent execution of a bond, in connection with Chambers, to take up the note. He is still a surety merely; and is entitled to all the benefits of that relation in a court of equity, though the form of his obligation be changed from indorser of a note to co-obligor in a bond. He remains bound for the same debt, and one in which he had no other interest or participation than as surety of another.

As such surety, his bill assumes that he had the right, under chapter 65 of the Revised Code, to have it assigned to him, on payment of the amount due; it alleges that such assignment was refused and insists that, as a consequence of such refusal, he is in equity released from the obligation of payment, without his being obliged to show how he could have indemnified himself and avoided loss by means of the assignment.

I do not know that the question, as a legal principle, has been settled under our statute; but I am unable to distinguish between the right of a surety, founded on the general equitable doctrine of subrogation, to have an assignment of collateral securities, or to have them used for his protection, and the same right as secured by express legal enactment. If a creditor gives time to a principal debtor, so as to put it out of his power at any time to subrogate the surety on payment of the debt by him, he discharges him without any reference to the use he might be able to make

of the power, were it transferred. The question is as to the existence of the right and not as to the source whence it is derived; and it can have no less force whether granted by positive enactment or derived from general principles of equity. The statute is express, that when any persons are bound in any bond, &c, and the money due thereon, &c, shall be paid, or tendered, by a surety therein, the obligee shall be obliged to assign such bond, &c., to such surety.

The principle on which the right, however derived, is founded is, that a surety, on paying the amount for which he is bound, shall be entitled to have all remedies against the real debtor placed under his control; and if the creditor, by agreement with the debtor, disables himself for any time to give the surety this power he discharges him.

Without going into the evidence in detail, I think, a tender of the money due upon this bond by the complainant to Mr. Watson, one of the obligees, is proved; and that it thereupon became his duty to make an assignment under the statute promptly, or in such time as the circumstances would admit of. He could not, at the moment, transfer a paper which was not in his possession; but from the time of the tender actually made it became his duty, and that of his co-obligees, to receive the money and make the assignment. The previous interviews had with each of the other defendants, though looking towards this object and showing a degree of solicitude on the part of the complainant to make good his right of substitution, imposed no obligation to do the act until the money was tendered; but from that time the duty became imperative and the consequence of not complying with it attached.

But, it is said, that even if the complainant was a surety in this bond, and though generally a surety has the right to an assignment and to the use of the remedies which such assignment would give him against his principal, this is

not a case where any such equity exists, because the complainant agreed, when he became surety, that the original bond and judgment against Chambers should have a priority of lien before the bond in which he became bound.

This brings up the question whether such agreement is proved, and what, if proved, would be its effect upon the surety's right to an assignment of the bond.

And first, *as to the proof of it.* The agreement is positively alleged in the answers (all of them,) and no doubt was in fact made; but the question I am to consider is, whether it is legally proved. A defendant's answer is evidence only where he is made a witness by the statements and interrogations of the bill; and when his answer states matter not averred by the bill, or beyond it, it is the statement of the defendant's case as a party, and it must be established by other proof. Now, the bill here states that Richard N. Merriken was a surety in this bond, and that, as such surety, he was entitled, on its payment, to a transfer of the security; that he tendered the money, which was refused, and demanded the transfer, which was not made. The answers, submitting first that he was not a surety and denying the tender, sets up further that he is not entitled to the equity of a surety, because when he became such he made a certain agreement which would prevent him in equity from using the transferred obligation of Chambers, for which he was surety, in the way he purposed to use it, that is, by obtaining a preference of lien on the printing press and fixtures. This new phase of the case, depending upon new facts, to which the complainant does not even allude, must be established in the regular way, by proof, or it must be rejected by the chancellor. However high the moral weight of the statements by which it is supported, it is of no legal weight in the scales of justice.

But, in the next place, *as to the effect of such agreement,* were it proved—I do not see that because a right to the as-

signment might be abused, or used against equity in the particular case, the defendants are justified in refusing it, on demand and payment of the money. Was it not clearly the legal course to award to the complainant his right to an assignment and afterward resist the illegal or inequitable use of it? Or, if such inequitable purpose in demanding the assignment (and the purpose is avowed in the bill) would be a sufficient answer to the complainant's case in a court of equity, the facts which show the purpose to be inequitable and in opposition to positive agreement must be proved in the case; and the proof here fails, outside of the answers, which, on the principle stated, cannot be taken as evidence.

It is, therefore, my opinion that the complainant is entitled to the relief asked for in his bill, and that the injunction heretofore granted must be continued. Let a decree be entered accordingly, with costs.