MARSHALL & ILSLEY BANK v. ELISHA A. CHILD and Another.

. May 5, 1899.

Nos. 11,527—(56).

### Promissory Note—Extending Time of Payment—Evidence.

Evidence considered, and *held*, that it was not sufficient to justify a finding that the time for the payment of the note in suit had been extended.

### Defense of Payment—Burden of Proof.

Where, as in this case, the answer denies an allegation of nonpayment in the complaint, and affirmatively alleges payment, the burden of showing payment is upon the defendant.

Action in the district court for McLeod county to recover a deficiency of $1,087.35 on a promissory note. The court, Cadwell, J., directed a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant E. A. Child appealed. Affirmed.

*F. R. Allen*, for appellant.

*Russell, Cray & Jamison*, for respondent.

START, C. J.

This is an action against the maker of a promissory note secured by a real-estate mortgage to recover a deficiency upon the note after the foreclosure of the mortgage. The answer is to the effect that the mortgaged premises were conveyed to a third party, Isaac C. Morrill, subject to the mortgage, and that the plaintiff, with knowledge thereof, for a valuable consideration, and without the knowledge or consent of the defendant, agreed with Morrill to, and did, extend the time of the payment of the note and mortgage for one year. This was put in issue by the reply. It is practically conceded by the plaintiff that the mortgaged premises were so conveyed subject to the mortgage, and that this fact was known to the plaintiff. The chief issue between the parties on the trial was whether the time for the payment of the note was in fact ever extended. Upon the evidence introduced and offered by the defendant on this question, the trial court directed a verdict for the

plaintiff, and the defendant appealed from an order denying his motion for a new trial.

If the agreement alleged in the answer was made, it would follow that the defendant was thereby released from liability on the note to the extent of the then value of the land, for by the agreement the relation of principal and surety was created between the land and the defendant. Travers v. Dorr, 60 Minn. 173, 62 N. W. 269.

The practical question, then, on this appeal is, was the evidence introduced and that offered on the trial, and excluded on the objection of the plaintiff, sufficient to sustain a finding that the alleged agreement for the extension of the time for payment of the note was made? In considering this question, all of the evidence offered must be treated as if actually given. This evidence tended to show the following facts:

The principal and interest of the mortgage debt were due on December 1, 1896, and on the 29th of that month the agent of the plaintiff, the Minnesota Loan & Trust Company, wrote to Mr. S. R. Child, then the attorney of Morrill, but who had previously acted for the defendant, submitting a proposition for a renewal of the principal of the loan for one year, and asked him to submit the proposition to the parties interested in the property. On January 27, 1897, Mr. Child replied, making a counter proposition, to the effect that Mr. Morrill would pay the interest then due, all delinquent taxes, and a commission of $30 for an extension for one year, with interest at 6½ per cent., the original rate stipulated in the note and mortgage. On February 2, 1897, the agent wrote to Mr. Child that he had received instructions from the plaintiff to complete an extension of the principal of the loan for one year, with interest at the original rate, upon condition "that all taxes that have accrued and are due at this time," including those of 1896, "are paid in full." In reply to this last proposition, Mr. Child wrote the agent substantially this:

"Will you kindly send extension notes for me to get signed according to your proposition? I do not understand that the expression referred to by you, 'Taxes that have accrued and are due at this time,' includes the 1896 taxes. I think it would be imprac-

tical for Mr. Morrill to pay them at the present time; however, I will submit the proposition, and if he can do so he doubtless will; if he cannot, I do not think you should stand on that part."

Mr. Child testified that he then had an interview with the agent. His testimony as to what occurred was this:

"I told him that I didn't think he ought to insist upon the payment of those 1896 taxes, and he said he wouldn't insist upon that if Morrill couldn't do it,—he wouldn't let that interfere,—but asked me to get Morrill to pay those if I could, and I told him if it was possible for Morrill to pay them he would pay them."

The next step in the negotiations was a letter dated February 6, 1897, from the agent to Mr. Child, which was in these words:

"Enclosed we hand you coupons for renewal of the principal of the Elisha A. Child loan for execution by the present owner of the property, and also by Mr. Elisha A. Child, the original maker of the note and mortgage. We trust that the owner of the property will be able to make payment of the 1896 taxes as indicated in your recent letter. Awaiting return of the coupons properly signed, with remittance for the interest and commission, with penalty thereon, together with the $63 for insurance, as per enclosed statement, we are," etc.

After the receipt of this letter, Morrill tendered to the agent for the plaintiff two coupon notes for an extension of one year from December 1, 1896, each signed by himself only; the taxes including those of the year 1896, and $30 as commission. The tender was made in the aggregate and separately, and permitted the agent to accept any part he might choose. The agent refused the tender at the time, and on the following day notified Mr. Child that all negotiations for an extension of the loan were off. On the next day the agent inquired of Mr. Child if the tender was kept good, and was told that it was on the terms upon which it was made,— that it was for an extension of the mortgage for one year. On the next day the agent signified its readiness to accept the payment of the interest due on the mortgage to December 1, 1896, and it was paid to it. At this time the value of the mortgaged premises exceeded the amount due on the note and mortgage. The plaintiff did not foreclose the mortgage until August 17, 1897, when it purchased the premises at foreclosure sale for the sum of $5,400.

The defendant's first claim is that this evidence shows an executory contract for the extension of the mortgage for one year from December 1, 1896, and a tender of performance in accordance with the contract. It is clear that the letters which passed between the parties do not constitute such a contract. There was no meeting of the minds of the parties upon the terms and conditions of the proposed contract. This is substantially admitted by the defendant, but it is insisted that the conversation of Mr. Child with the agent, which we have quoted, with the correspondence, establishes the contract claimed. But it was only on condition that Mr. Morrill could not pay the taxes of 1896 that the agent agreed that he would not insist on that condition, and the matter was left open for the purpose of ascertaining whether it was possible for Mr. Morrill to pay taxes. Before anything further was said or done, the proposition contained in the letter of February 6, 1897, was submitted on behalf of the plaintiff. There is no claim that this last proposition was ever accepted, or a performance of its terms tendered. The extension coupons tendered were not signed by the defendant. The correspondence and the oral testimony together or separately do not show a contract for the extension of the time of payment of the mortgage debt.

The defendant, however, further claims that there was an actual executed contract for an extension by an acceptance of the interest, which he claims was tendered on condition that an extension be granted. The tender which the defendant offered to prove was not made upon the condition that the time of payment of the debt be extended, but upon the assumption of the existence of an executory contract for such extension. It is true that the defendant also offered to prove that after the plaintiff had refused the tender, and had notified Mr. Morrill all negotiations for an extension were off, the agent of plaintiff—the trust company—asked Mr. Child "if the tender made the other day was still kept good," who answered that it was kept good on the same terms as made; that the tender (that is, as originally made, not the tender of interest alone) was for an extension of the mortgage for one year from December 1, 1896, to Mr. Morrill, and that the trust company received the interest, and

directed that the taxes be paid to the county treasurer, as it was not the proper party to receive them.

If the interest due had been tendered by Morrill, who was not personally bound to pay it, on the express condition that the time of the payment of the principal should be extended for one year, and the plaintiff had accepted the proffered payment, it may be conceded, without so deciding, that this would have amounted to an executed contract for an extension, although the plaintiff received only what was legally its due. But when the whole offer is considered in connection with the correspondence between the parties, it is clear that the interest alone was not tendered or accepted on condition that the extension be granted. This is apparent from what preceded and followed the payment and acceptance of the interest. The conditions upon which the plaintiff offered to grant the extension, as stated in the letter of February 6, were that the coupon notes for the extension be signed by both the defendant and the owner of the land, and that taxes, commissions, and insurance be paid. Coupons signed by Morrill alone, taxes, and commissions were tendered, and refused; notice was given that negotiations for an extension were ended; then, after the interest actually due had been paid and accepted, the commission, taxes, and coupon notes were again tendered and refused.

Upon the whole record, the trial court correctly excluded the offered evidence, and directed a verdict for the plaintiff for the balance due on the note; for the evidence, if received, would not have sustained a finding that the time for the payment of the debt had been extended as claimed.

The complaint alleges nonpayment of the note. The answer denies this allegation, and affirmatively alleges that the note has been paid, except the sum of $845. The defendant claims that the burden of proving the allegations in the complaint of nonpayment was upon the plaintiff.

Payment is an affirmative defense, to be pleaded and established by the party asserting it; and when, as in this case, the answer denies a formal allegation of nonpayment in the complaint, and affirmatively alleges payment, the burden of showing payment is upon the defendant. On the trial, the defendant proved that the

76 M.—12

expense of foreclosing the mortgage which secured the payment of the debt was $122.56, but neither party offered any evidence as to whether the plaintiff had filed the affidavit within ten days after the foreclosure, showing the costs and expenses of the foreclosure, required as a condition for retaining the amount thereof from the proceeds of the sale. The amount of the foreclosure costs was deducted from the proceeds of the sale, and only the balance applied in payment of the note. It is the contention of the defendant that the $122.45 retained as costs should also be applied in payment of the note. The burden was upon the defendant to show that he was entitled to have the amount of the costs so applied.

Order affirmed.