### NEUKIRCH v. McHUGH et al. (No. 6504.)

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

1. MORTGAGES (§ 283*)—SALE OF PROPERTY—LIABILITY OF MORTGAGOR.

A mortgagor, liable as a principal for the debt secured, becomes, on conveying the equity of redemption, a surety, the land being the primary fund, so that if, without his knowledge, the mortgagee and the grantee execute a valid agreement for an extension of time of payment, the mortgagor is discharged from liability on the bond to the extent of the value of the land at that time, and the mortgagee takes the risk of future depreciation.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 756–758; Dec. Dig. § 283.*]

2. MORTGAGES (§ 283*)—SALE BY MORTGAGOR—EXTENSION OF MORTGAGE.

A surety, claiming to be released by an extension of time between the creditor and the principal debtor, must allege and prove a valid agreement founded on a good consideration.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 756–758; Dec. Dig. § 283.*]

3. MORTGAGES (§ 283*)—SALE BY MORTGAGOR—EXTENSION OF MORTGAGE—CONSIDERATION.

That an agreement extending the time for payment of a mortgage debt between the mortgagee and the mortgagor's grantee by operation of law

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

raised the rate of interest 1 per cent. did not establish a good consideration for the extension agreement, so as to operate to relieve the mortgagor as surety for the debt.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 756–758; Dec. Dig. § 283.*]

4. PLEADING (§ 8*)—CONCLUSION OF LAW—VALUABLE CONSIDERATION.

An allegation that an extension agreement between a mortgagee and the mortgagor's grantee, claimed to discharge the mortgagor from his liability as surety, was made "for a valuable consideration," was a mere conclusion of law, and not an allegation of fact.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½, 68; Dec. Dig. § 8.*]

Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Action by Blanche B. Neukirch against William J. McHugh and others. From an order overruling plaintiff's demurrer to the separate defense of the amended answer of defendant Mitchell A. C. Levy, the issues arising on the demurrer having been brought on and tried as a contested motion, plaintiff appeals. Reversed, and demurrer sustained, with leave to amend.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Harold Nathan, of New York City, for appellant.

Daniel P. Hays, of New York City, for respondent.

LAUGHLIN, J. This is an action for the foreclosure of a mortgage. A deficiency judgment is demanded against the respondent Levy, who executed the mortgage as collateral security for his bond given, on the 31st day of May, 1894, to one Ranger, for the payment of $35,000, and interest at the rate of 4½ per cent. per annum, on the 31st day of May, 1899. The bond and mortgage were duly assigned to the plaintiff on the 5th day of July, 1894. The indebtedness was reduced to $20,000, and plaintiff alleges that on the 3d day of December, 1902, the respondent and one Fitzpatrick, who claimed to be the owner of the mortgaged premises, entered into an agreement in writing with her whereby, for a valuable consideration, the time for the payment of the balance remaining unpaid was extended to the 30th day of November, 1905, and "whereby the said mortgage debt was to bear interest from the 30th day of November, 1902, at the rate of 5 per cent. per annum, payable semiannually, and whereby said Mitchell A. C. Levy agreed that he would pay to the plaintiff or to her assigns the said sum of $20,000 and the interest thereon at the time and in the manner aforesaid." Judgment was demanded for the unpaid balance of $20,000 and interest from the 30th day of November, 1911, at the rate of 6 per centum per annum.

The demurrer to the separate defense is on the ground that it is insufficient in law on the face thereof. The answer of the respondent denies that there was anything due and owing from him on the bond and mortgage. The separate defense repeats the denials, and alleges that after executing the bond and mortgage the respondent conveyed the

premises to Fitzpatrick; that thereafter he and the respondent entered into an agreement in writing with plaintiff extending the time of payment of the unpaid principal until the 30th day of November, 1905, and that on the 30th day of November, 1906, the plaintiff and Fitzpatrick, who still owned the premises, executed an agreement "whereby the plaintiff duly and for a valuable consideration extended the time for the payment of the balance of twenty thousand dollars secured by said bond and mortgage for a further period of one year from the date of said instrument"; and "that in and by said agreement, and as part of the consideration for said extension of time, the said James M. Fitzpatrick therein duly promised and agreed to pay to said plaintiff, besides said principal sum, interest thereon at an increased rate, namely, at the rate of 6 per centum per annum from November 30, 1906, until said principal sum should be fully paid." It is further alleged in the answer that the respondent did not join in the extension agreement between the plaintiff and Fitzpatrick, and did not consent thereto, and had no knowledge or notice thereof, and that at that time the mortgaged premises were ample security for the payment of the balance due upon the mortgage, and were of much greater value than the then existing incumbrances, including the plaintiff's mortgage.

[1] The point made by the appellant is that the defense is insufficient, for the reason that it is not shown that there was a good and valid consideration for the extension agreement to which the defendant was not a party. The defense is predicated upon the equitable rule that a mortgagor, who is liable as a principal for the debt secured by the mortgage, becomes, on conveying the equity of redemption, a surety, the land being then primarily liable, and that where, without his knowledge or consent, the mortgagee and his grantee execute a valid agreement for the extension of the time of payment, he is discharged from liability on the bond to the extent of the value of the land at that time, and the mortgagee takes the risk of future depreciation. Murray v. Marshall, 94 N. Y. 611; Antisdel v. Williamson, 165 N. Y. 372, 59 N. E. 207; Calvo v. Davies, 73 N. Y. 211, 29 Am. Rep. 130; Howard v. Robbins, 170 N. Y. 498, 63 N. E. 530; Matter of Piza, 5 App. Div. 181, 38 N. Y. Supp. 540.

[2] It is incumbent upon a surety, claiming to be released by an agreement between the creditor and the principal debtor for an extension of time, to allege and prove a valid agreement founded upon a good consideration. Olmstead v. Latimer, 158 N. Y. 313, 53 N. E. 5, 43 L. R. A. 685; National Citizens' Bank v. Toplitz, 178 N. Y. 464, 71 N. E. 1.

[3] The allegation that the extension provided for the payment of 6 per cent. interest shows no consideration, for the mortgage was due at that time, and although by contract between the parties the rate of interest was limited to 5 per cent. until it became due, by operation of law, as damages for breach of the contract, the rate became 6 per cent. after due date. Sands v. Gilleran, 159 App. Div. 37, 144 N. Y. Supp. 337.

[4] The authorities in this state are not in harmony on the question as to whether an allegation that a contract—other than a negotiable

instrument, to which a statutory rule applies—was made "for a valuable consideration," is a sufficient allegation of the fact that there was a good and valid consideration. It has recently been held by the Appellate Division in the Third Department, in St. Lawrence County Nat. Bank v. Watkins, 153 App. Div. 551, 138 N. Y. Supp. 116, that such an allegation is an allegation of fact; but it has been repeatedly held in this department, following the common-law rule requiring that the particular consideration be pleaded (see National Citizens' Bank v. Toplitz, 178 N. Y. 464–467, 71 N. E. 1), that such an allegation is a mere conclusion of law and insufficient to constitute an allegation of the fact (Fulton v. Varney, 117 App. Div. 572, 102 N. Y. Supp. 608; Czerney v. Haas, 144 App. Div. 430, 129 N. Y. Supp. 537; Browning, King & Co. v. Terwilliger, 144 App. Div. 516, 129 N. Y. Supp. 431). See, also, Kinsella v. Lockwood, 79 Misc. Rep. 619, 140 N. Y. Supp. 513.

In view of the former decisions of this court on the precise point now presented, which, being only one of pleading, is not vital, and with which it is no hardship to comply, I think that we should adhere to the rule prescribed by the decisions in this department, and leave it for the Court of Appeals to correct us if we are in error, and to decide whether the rule that an allegation that a promise to pay, or that a note or other instrument, was duly assigned "for value received" (Prindle v. Caruthers, 15 N. Y. 425; Benedict v. Kress, 97 App. Div. 65, 89 N. Y. Supp. 607; National Citizens' Bank v. Toplitz, supra), is a sufficient allegation of the fact, should apply where the allegation is, as here, that the parties "for a valuable consideration" made and entered into a certain contract.

If this view prevail, it will require a reversal of the order; but another point has been presented by the appellant, which is likely to arise again, and it is advisable that it should be discussed, with a view to avoiding another appeal. The learned counsel for the appellant contends that the position of the respondent was changed by the extension agreement to which he was a party, and that he thereby, by promising to pay the debt, again became primarily liable for the indebtedness, as he was originally. That contention is based mainly on the decision of this court in National Citizens' Bank v. Toplitz, 81 App. Div. 593, 81 N. Y. Supp. 422, where it was held that an accommodation maker of a note was not discharged by an extension of time of payment made between the holder and the payee for whose accommodation the plaintiff, when it discounted the note, knew it had been made. The theory of that decision was that the accommodation maker was primarily liable on the note, and had voluntarily become the principal debtor, and that, owing to the provisions of the Negotiable Instruments Law (Consol. Laws, c. 38), the relation of principal and surety did not arise. The affirmance by the Court of Appeals was on another ground, and this point was not considered.

Manifestly that decision is not in point here, for this case depends upon the equitable doctrine applicable to the relation of principal and surety, in so far as it is deemed controlling by analogy, and there is no statute limiting or affecting its application. The mortgagor was liable

for the payment of the mortgage debt, when he thus renewed his liability, and it is therefore argued that some effect must be given to his new agreement. It is alleged that the new agreement was made by the mortgagor and Fitzpatrick, the owner of the equity of redemption. It may be that it will appear when the agreement is presented that the purpose of incorporating this provision was to make Fitzpatrick liable for the indebtedness, and that the only purpose of having the mortgagor execute it was to preclude him from claiming to be discharged from liability by the extension. Although we are to construe the pleading as it stands, I think the agreement, if as alleged, should not be construed as restoring the original liability of the mortgagor as a principal. The mortgagee knew that he was not the owner, and, so far as is alleged, that he had no interest in the premises at the time. She knew that his liability was that of surety, and that the land was primarily liable, and I think that there was no intention to release the primary liability of the premises. In Grow v. Garlock, 97 N. Y. 81, which was a foreclosure action, where the mortgagee knew that the mortgagor executed the mortgage to accommodate his son, who guaranteed payment of the bond and mortgage, it was held that the mortgagee, knowing that as between father and son the father was the surety, was obliged to respect that relationship, and that by his failure to do so, and in parting with security received from the son, the father, who was in reality a surety, although apparently a principal, was discharged. This rule was stated in Dibble v. Richardson, 171 N. Y. 131, at page 137, 63 N. E. 829, at page 830, as follows:

"When the facts show that two debtors, as between themselves, are principal and surety, and this is known to the creditor, he is bound to respect the relation, even if, by the terms of the security held by him, the real surety occupies the position of principal."

The case of Merriken v. Godwin, 2 Del. Ch. 236, is quite in point on the facts. The court there said:

"The original connection of the complainant (Merriken) with the debt for which the defendants have judgment and execution was that of an indorser and surety to Chambers; and I do not think this character changed by his subsequent execution of a bond, in connection with Chambers, to take up the note. He is still a surety merely, and entitled to all the benefits of that relation in a court of equity, though the form of his obligation be changed from indorser of a note to co-obligor on a bond. He remains bound for the same debt, and one in which he had no other interest or participation than as surety of another."

It follows that the order should be reversed, with $10 costs and disbursements, and the demurrer sustained, with $10 costs to appellant, but with leave to the respondent to amend on payment of costs in this court and in the court below.

SCOTT and DOWLING, JJ., concur. INGRAHAM, P. J., dissents.

HOTCHKISS, J. I concur in the result, because I feel bound by the decisions of this court in this department on the question of pleading, but I wish at the same time to record the fact that I am not in sympathy with these decisions.