CITY BANK FARMERS TRUST COMPANY (Formerly Known as THE FARMERS' LOAN AND TRUST COMPANY), Respondent, v. SLOW-MACH REALTY CORPORATION and Others, Defendants, Impleaded with THE HOAGLAND CORPORATION, Appellant.

First Department, June 2, 1933.

*Clark H. Hebner*, for the appellant.

*George S. Mittendorf* of counsel [*Milton R. Friedman* with him on the brief; *Taylor, Blanc, Capron & Marsh*, attorneys], for the respondent.

TOWNLEY, J.   The action is brought by the City Bank Farmers Trust Company to foreclose a mortgage made to secure the sum of $95,000 covering premises at 165 Madison avenue, New York city. Plaintiff demands a deficiency judgment against the Hoagland Corporation by virtue of an assumption of the bond and mortgage.

On December 1, 1924, the Hoagland Corporation, the then owner, made an agreement with the Farmers' Loan and Trust Company (now the City Bank Farmers Trust Company) extending the time for the payment of the mortgage to December 1, 1929, and by this agreement the Hoagland Corporation assumed payment of the principal sum.   The Hoagland Corporation later sold the property subject to the mortgage.

The defense of the Hoagland Corporation is that it was released from its liability by virtue of an extension agreement made between the plaintiff and the Slowmach Realty Corporation, the holder of a second mortgage at the time when the mortgage was past due and when the fee owner was unable to make payments of interest and taxes.   The Slowmach Realty Corporation had not assumed the mortgage.   On October 17, 1929, plaintiff offered to the then fee owner an option to continue the mortgage as an open loan until further notice or to renew it for three years at a charge of sixty dollars.

Prior to December 11, 1929, a Mr. Mack, representing the holder of this second mortgage, had a telephone conversation with Mr. Barnes, assistant trust officer of the plaintiff, in which he asked whether if they paid the interest on the first mortgage they would be given "time to pay the taxes and let the [first] mortgage run on, not start a foreclosure."   Barnes replied, " We would permit the mortgage to stand past due in the position of an open loan for that period [until December 1st, 1930] provided the taxes and interest were paid up to date."   Following this and on December 11, 1929, the holder of the second mortgage sent plaintiff a check for $2,375, six months' interest due on December first on the first mortgage and asked that in acknowledging payment they confirm agreement reached between Mr. Mack and Mr. Barnes.   On December 16, 1929, plaintiff wrote: " We also beg to inform you that this loan will be carried open for another year to December 1, 1930, at the rate of $5\frac{1}{2}\%$ from December 1, 1929, provided that the taxes and interest are paid promptly."   The first mortgage was

not enforced during that year and a similar arrangement was made for the following year in the course of the negotiations for which, however, plaintiff wrote on October 8, 1930, and again on November 10, 1930, that they would not grant a formal extension of the mortgage and said: "We would not care to do other than carry the loan as a 'past due loan' for an additional year to December 1st, 1931, with interest at $5\frac{1}{2}\%$. * * * Kindly advise us by return mail if this is agreeable to you." To this the holder of the second mortgage on November 11, 1930, replied: "We took it for granted that the letter dated October 8th closed the matter and thereunder you were going to carry the loan as a past due mortgage for an additional year to December 1, 1931, with interest at $5\frac{1}{2}\%$.

"We hereby confirm that this is acceptable to us."

There was no reply to that and it must be presumed that the defendant's interpretation of the arrangement made was that the mortgage was extended for a year. It is conceded that the holder of the second mortgage paid all interest on the first mortgage and taxes up to June 1, 1931.

The second mortgagee never having assumed the mortgage is under no obligation to pay interest and taxes. It was said in *Krebs* v. *Carpenter* (124 App. Div. 755, 757): "There can be no question but what payment of interest upon an indebtedness by a person who is not liable to pay the indebtedness is a good consideration for an extension of the balance due. (*Jester* v. *Sterling*, 25 Hun, 344, and cases there cited.)" We think the letters quoted made out a clear contract of extension between the plaintiff and the second mortgagee which had meanwhile foreclosed and become the owner of the property.

The statement of plaintiff "that this is not to be construed as a formal extension of the mortgage" does not alter the plain result of the agreement arrived at. It was clearly understood that the mortgage was not to be foreclosed. That was what plaintiff agreed to and that was what defendant paid for. The mere use of contradictory words does not make the situation other than what it actually was.

The extension agreement made discharged the surety to the extent of the value of the land. The measure of the injury done to the appellant, the Hoagland Corporation, is its right of subrogation and as the Court of Appeals said in *Murray* v. *Marshall* (94 N. Y. 611, 616): "that necessarily was bounded by the value of the land. The extension of time, therefore, operated to discharge him only to the extent of that value. At the moment of the extension his right of subrogation was taken away, and at that moment he was discharged to the extent of the value of the land, since the

extension barred his recourse to it, and once discharged he could not again be made liable. From that moment the risk of future depreciation fell upon the creditor who by the extension practically took the land as his sole security to the extent of its then value, and assumed the risk of getting that value out of it in the future."

The answer attempted to be made by the plaintiff is that the letters which in terms refer to an open mortgage and a definite period of a year create an ambiguity which can be explained orally. Assuming that there is an ambiguity and the court properly received evidence to explain it, the testimony none the less is as unsatisfactory, and as ambiguous, as the letters themselves: " Q. Will you tell the Court, giving the substance, if you cannot give the exact words, your conversation with Mr. Mack on that occasion? A. Similar to many others I have had on the same subject, that we would permit the mortgage to stand past due in the position of an open loan for that period, provided the taxes and interest were paid up to date."

We interpret all this testimony as meaning the same as the writings, namely, that there was a definite agreement not to foreclose for a year and that this promise was paid for by the receipt of benefits furnished by one who had not assumed the mortgage.

The judgment should be reversed in so far as it adjudges the defendant the Hoagland Corporation liable for any deficiency, the action severed and a new trial should be ordered to determine the value of the property at the time the extension agreement was made with a view of fixing the amount by which the debt of the Hoagland Corporation was discharged, with costs to appellant to abide the event.

FINCH, P. J., MERRELL, O'MALLEY and SHERMAN, JJ., concur.

Judgment so far as appealed from adjudging the defendant the Hoagland Corporation liable for any deficiency reversed upon questions of fact and of law, the action severed, and a new trial ordered, with costs to the appellant to abide the event. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.