ALROPA CORPORATION *v.* SNYDER *et al.*

No. 10956. APRIL 15, 1936.

*Jones, Johnston, Russell & Sparks,* for plaintiff.
*Park & Strozier,* for defendant.

BELL, Justice. This case involves the liability of one who purchased land subject to a mortgage which he assumed, and who sold the land to another under a like assumption, where the latter resold the property subject to the debt but without an assumption by his grantee, and where such grantee later sought and obtained from the mortgagee an extension in the maturity of the mortgage and of a portion of the debt, without the knowledge or consent of the party against whom liability for the debt is now asserted. The suit was in equity, and all persons who should have been made parties were either designated and served as such or were accounted for by death or non-residence. The case was submitted to the judge for trial, without a jury, on an agreed statement of facts. The judge entered a finding and judgment refusing a recovery, and the plaintiff excepted. The suit was brought by Alropa Corporation, the holder by assignment of notes secured by a mortgage to real estate in Florida, all originally executed by Joseph Fisher to Anson M. Goddard. Fisher sold the mortgaged property to Louis Snyder, who assumed the mortgage. Snyder later sold to W. A. Berry, who in like manner assumed the mortgage debt. Thereafter Berry sold the property, subject to the debt, to Eighteenth Street Investment Company, but without an assumption by this company. Berry paid a portion of the debt before his conveyance to Eighteenth Street Investment Company. After its purchase the investment company made additional payments. All of such payments were made to Goddard, the original mortgagee, who, in consideration of the payments by the investment company, extended the maturity of the mortgage and of a portion of the indebtedness for a period of one year. The debt was never paid in full, and finally Goddard foreclosed the mortgage and caused the property to be sold. The proceeds were not sufficient to pay the entire debt, and Alropa Corporation, as a subsequent assignee of the unpaid notes and of the rights of the mortgagee, is suing Snyder for the deficiency, on the assumption made by him in his purchase from Fisher, the original mortgagor. Synder pleaded, that under the facts touching his sale of the property he became, as between himself and his grantee, a mere surety, and that he was discharged by the extension granted by the mortgagee to the investment company. The statement thus far is but a summary of the pleadings. In order that the case may be fully understood, it is

necessary to go further and give the facts as contained in the agreed statement, so far as they are material:

On February 14, 1925, Joseph Fisher executed to Anson M. Goddard three promissory notes, as follows: (1) one note for $7000 due one year after date; (2) one note for $6000 due two years after date; (3) one note for $7000 due three years after date. On the same date, to secure these notes, Fisher executed to Anson M. Goddard a mortgage on described real estate situated in Miami, Florida, of which he was the owner at that time. The mortgage contained a stipulation that "If any of said sums of money . . be not promptly and fully paid within thirty days next after the same severally become due and payable, . . the said aggregate sum mentioned in said promissory notes shall become due and payable forthwith or thereafter at the option of the mortgagees, their heirs, legal representatives or assigns, as fully and completely as if the said aggregate sum of twenty thousand & no/100 dollars was originally stipulated to be paid on such day, anything in said promissory notes or herein to the contrary notwithstanding." On April 17, 1925, Fisher sold the property to Louis Snyder, the present defendant, and conveyed it to him by warranty deed which provided that the deed was subject to the mortgage, and "that the said Snyder assumed the mortgage." On August 31, 1925, before the maturity of any of the indebtedness, Snyder sold the property to W. A. Berry, who also assumed the mortgage. Note No. 1, for $7000, was paid by W. A. Berry on the date of its maturity, February 14, 1926. On September 15, 1926, W. A. Berry conveyed the property to Eighteenth Street Investment Company by a deed which recited that it was made subject to the mortgage, but which did not contain an assumption.

Note No. 2, being for $6000, was not paid at its maturity on February 14, 1927; but on March 18, 1927, the investment company paid $3000 on this note together with the interest which had accrued on this note and on note No. 3; payment being made to the mortgagee, Anson M. Goddard. On the same day, Goddard and his wife executed and delivered to the investment company a writing acknowledging these payments, and, in consideration thereof, stipulating as follows: "We hereby agree that we shall not exercise our right to foreclose the above-mentioned mortgage for a period of one year from February 14, 1927; provided, however, that

the interest on the entire obligation will be paid on August 14, 1927, when the same is due to be paid; and provided further that the buildings on the property are kept covered with fire insurance; and we hereby further say that we have made a notation on the back of the $6000 above-mentioned note to the effect that the time of payment has been extended to February 14, 1928." On the same date, to wit, March 18, 1927, the Goddards entered on the back of note No. 2 credits for the payments made by the investment company on that date, and also made and signed an entry thereon, as follows: "Time of payment of the balance due on the principal of the within note has been extended to February 14, 1928, as per letter hereto attached." The "letter" is the instrument quoted above as to postponing the right to foreclose the mortgage for a period of one year. The interest on the entire remaining balance which accrued on August 14, 1927, was paid on the following day. The buildings were also reinsured, as required by the extension agreement. On February 18, 1927, and on March 18, 1927, and during the intervening period, the mortgaged property had a fair market value of "at least" $10,000. No other payments were made on either note No. 2 or note No. 3. On or about April 15, 1928, Goddard instituted a suit to foreclose the mortgage. Under a decree entered in that suit, the property was sold on July 2, 1928, for $10,000, which was the reasonable and fair market value at that time. After deducting costs and expenses, the proceeds amounted to $8963.30. After crediting such proceeds and calculating interest as of July 2, 1928, the remainder of the debt was $1653.09, which amount, with interest from that date, the plaintiff is entitled to recover if the defendant should be held liable for any sum whatever.

The defendant, Snyder, had no knowledge of any of the transactions or communications between Goddard and the Eighteenth Street Investment Company until after the foreclosure of the mortgage. No demand was ever made upon him for the payment of note No. 2 or of interest, and he did not know that this note was due and unpaid until after the foreclosure proceedings were instituted. The defendant was named as a defendant in the foreclosure suit, but was notified of its pendency by mail through the clerk of the court, and, until the receipt of this notice, he had no knowledge that any part of the mortgage debt was unpaid. He

did not appear in person or by attorney in the foreclosure suit, and no deficiency decree was issued therein against him. Alropa Corporation, the plaintiff, became the owner of notes Nos. 2 and 3 by indorsement before the filing of the present suit.

■ In *Stapler* v. *Anderson*, 177 *Ga.* 434 (170 S. E. 498), this court quoted the following statement as contained in 19 R. C. L. 384, § 156: "An agreement for an extension of time, entered into between the mortgagee and a grantee who has assumed the mortgage, will, if valid and made on sufficient consideration, so as to be legally enforceable, discharge the original mortgagor or intermediate grantees who may likewise have assumed the mortgage, unless the extension is assented to by the mortgagor or intermediate grantees." We took notice of this statement as expressing the general rule, although, as pointed out in that decision, a different view has been taken in some jurisdictions. In Calvo *v.* Davies, 73 N. Y. 211 (29 Am. R. 130), it was held: "When a grantee covenants to pay a mortgage on the granted premises, executed by the grantor, the relation of principal and surety arises; and an extension by the mortgagee of the time of payment of the mortgage, without the mortgagor's consent, releases the grantor from personal liability." In Codman *v.* Deland, 231 Mass. 344 (121 N. E. 14), it was said: "When a grantee in a deed assumes and agrees to pay a mortgage on the property conveyed, he takes upon himself the burden of the debt or claim secured by the mortgage and as between himself and his grantor he becomes the principal and the latter merely a surety for the payment of the debt. The mortgagee is not bound by such an agreement unless he assents to it. But when, with knowledge of such an agreement, he enters into an independent stipulation on his own account with the grantee, whereby he obtains a new obligation running directly to himself on the footing that the grantee becomes principal, then in the absence of special conditions he is held to have recognized and become bound by the relation of principal and surety existing between the mortgagor and the grantee. By the agreement with the mortgagee in the case at bar the grantee agreed to pay the debt and she became the principal debtor. It follows that the agreement for extension of time of payment given to the grantee operated to discharge the mortgagor as original debtor, now become surety." Both of these statements were quoted in *Stapler* v. *Anderson,* supra, in the consideration of which we ex-

amined many cases, and concluded that the two decisions just referred to were not only in accord with the weight of authority but expressed the better view. In *National Mortgage Corporation* v. *Bullard,* 178 *Ga.* 451, 454 (173 S. E. 401), it was said: "The creditor by bringing suit against the assumer confirms and adopts the transaction between him and the original debtor."

Accordingly, under the rule which now obtains in this State, Snyder, who purchased the mortgaged property and assumed the debt, became a mere surety as between himself and his grantee, who in like manner assumed the debt, and would therefore be wholly discharged, where the mortgagee, knowing of such relationship, granted an extension to the subsequent assumer without his knowledge or consent. The proposition thus stated is not questioned in the present case. The plaintiff contends, however, that the rule is without application here, for the reason that the extension was not granted to an assumer. It is true that the extension was not granted to Berry who assumed the debt in his purchase from Snyder, but was made to a subsequent grantee, namely, Eighteenth Street Investment Company, which did not assume the liability in its purchase from Berry. In these circumstances the principle may be subject to some variation, although under the facts of the instant case it is fully applicable, we think, in favor of Snyder. The variation to which we have just alluded is as to the measure of the release where an extension is granted to a subsequent purchaser, who merely bought subject to the debt *and did not assume it.* In such case, it is generally held that the extension will result in a release only to the extent of the value of the mortgaged property in the hands of such person at the time the extension is granted. Insley v. Webb, 122 Wash. 98 (209 Pac. 1093, 41 A. L. R. 274); Gilliam v. McLemore, 141 Miss. 253 (106 So. 99, 43 A. L. R. 79); Zastrow v. Knight, 56 S. D. 554 (229 N. W. 925, 72 A. L. R. 379); Continental Mutual Savings Bank v. Elliott, 166 Wash. 283 (6 Pac. (2d) 638, 81 A. L. R. 1005). Only one of these decisions, Zastrow v. Knight, dealt with an extension to one who did not assume, but all of them are cited because of the valuable case notes appearing in connection therewith in the American Law Reports. See also Bunnell v. Carter, 14 Utah, 100 (46 Pac. 755); Marshall & Ilsley Bank v. Child, 76 Minn. 173 (78 N. W. 1048); Sime v. Lewis, 112 Minn. 403 (128 N. W. 468); Reeves v. Cordes, 108 N. J. Eq. 469 (155 Atl.

547) ; North End Savings Bank *v.* Snow, 197 Mass. 339 (83 N. E.
1099, 125 Am. St. R. 368) ; Mutual Benefit Life Insurance Co. *v.*
Lindley, 97 Ind. App. 575 (183 N. E. 127) ; In re Piza, 5 App.
Div. 181 (38 N. Y. Supp. 540) ; Winslow *v.* Stoothoff, 104 App.
Div. 28 (93 N. Y. Supp. 335) ; Meuser *v.* Kirschbaum, 84 Misc.
259 (145 N. Y. Supp. 677) ; Neukirch *v.* McHugh, 165 App.
Div. 406 (150 N. Y. Supp. 1032) ; Feigenbaum *v.* Hizsnay, 187
App. Div. 126 (175 N. Y. Supp. 223) ; Adler *v.* Berkowitz, 229
App. Div. 245 (240 N. Y. Supp. 597) ; Hoffman *v.* Piccone, 137
Misc. 537 (242 N. Y. Supp. 707) ; Syracuse Trust Co. *v.* First
Trust & Deposit Co., 141 Misc. 603 (252 N. Y. Supp. 850) ; City
Bank Farmers Trust Co. *v.* Slowmach, 238 App. Div. 524 (264
N. Y. Supp. 786). What is perhaps the leading case on this point
is Murray *v.* Marshall, 94 N. Y. 611, which has been cited and fol-
lowed in many other decisions.

A different view, however, was taken by the Supreme Court of
California, in Braun *v.* Crew, 183 Cal. 728 (192 Pac. 531), where
it was held that the discharge was absolute, notwithstanding the
subsequent purchaser to whom the extension was granted had not
assumed the mortgage debt. We do not deem it necessary in the
present case to make a choice as between the authorities upon this
question. If the investment company, to which the extension was
granted, had purchased from Snyder, a choice might be necessary;
because in that case the question would seemingly arise as to
whether Snyder was released entirely, or only to the extent of the
value of the mortgaged property. But the facts are that Berry
stood between Snyder and the investment company and assumed
the debt as between himself and Snyder. Thus, as between these
two parties, Berry was the principal debtor and Snyder was the
surety. While the investment company in its purchase from Berry
did not assume the debt so as to give to Berry the strict relation
of a surety as between himself and that company, his status was
yet analogous thereto, and the result is that he was released to some
extent, either wholly or to the amount of the value of the property,
by the extension granted to the investment company. The effect
which the extension had upon the liability of Berry, whether releas-
ing him in whole, or in part only, was of vital consequence to
Snyder who was now a mere surety for him. Synder was entitled
to have the contract between himself and Berry remain of force

according to its terms, and the act of the mortgagee in thus releasing or diminishing the liability of Berry thereunder had the effect of discharging Snyder as surety. This view finds support in Meuser *v*. Kirschbaum, supra. In that case Meuser brought a suit to foreclose a mortgage and sought a deficiency judgment against Potter and Kirschbaum. Potter had executed the mortgage to Meuser. All that appeared from the pleadings was that Kirschbaum had a conveyance of the mortgaged premises from one Lulu Banford. Meuser extended the mortgage to Kirschbaum without Potter's knowledge or consent. Potter claimed that the case fell within Calvo *v*. Davies, 73 N. Y. 211 (29 Am. R. 130), supra, and that he was entirely released. Meuser claimed that it fell within Murray *v*. Marshall, supra, and that Potter was released only as to the value of the mortgaged land. The court gave recognition to both decisions, but said: "It is not disclosed just how the title passed from the defendant Potter to the defendant Ray V. Kirschbaum, although it does appear that one Lulu Banford was an intermediate owner. If she or any other intermediate owner assumed the payment of the mortgage debt, then this case comes in the class with Calvo *v*. Davies [supra], and such extension released the defendant Potter from all obligation on his bond, and no cause of action is stated against him. If, on the other hand, there was no such assumption of the payment of the mortgage debt by Lulu Banford or any other intermediate owner, then the defendant Potter was exonerated from his liability on his bond only to the extent of the value of the mortgaged property at the time the extension agreement was made with the defendant Ray V. Kirschbaum." This solution is not affected by the absence of proof as to whether Berry consented to the extension, for Berry could not have bound Snyder by any consent which he might have given; neither could the mortgagee and Berry together have altered the rights as between Berry and Snyder, without the concurrence of the latter. Compare Zastrow *v*. Knight, supra. While if Berry *did* consent his own liability would not have been affected, and Snyder in that case would not have been released because of a change in the status of Berry, he would nevertheless be released as a surety because of the extension of the debt as thus granted to his principal.

■ In all that has been said above, we have assumed that Goddard, the mortgagee, had knowledge of the contractual relationships

existing between the parties at the time of granting the extension to the investment company, since there could be no release in the absence of such knowledge. Under the record and the assignments of error, we need not decide whether the mortgagee was charged with knowledge as a matter of law from the facts appearing. It is shown in the agreed statement, however, that Berry paid the first note in the sum of $7000. Later the investment company paid a large sum on the second note and also paid the interest on the entire remainder of the indebtedness. In consideration of the payments by the investment company, it obtained from the mortgagee an agreement extending the maturity of the second note for the period of one year, and also postponing the right to foreclose the mortgage for the same period. The judge was authorized to find that these facts, taken together, were sufficient to put the mortgagee on inquiry as to whether other parties than the mortgagor had acquired an interest in the land, and, if so, who they were, and on what terms. "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. · Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." Code of 1933, § 37-116. In Sime v. Lewis, supra, a similar question came before the Supreme Court of Minnesota. In that case, the only evidence of knowledge on the part of the mortgagee was a letter from the husband of the mortgagor's grantee about the note and the fact that there was some later correspondence between the mortgagee and husband regarding the extension. The court said: "The first correspondence between Cummings (the mortgagee) and M. F. Smith, the husband of the purchaser of the land, took place a few days before the note became due; and while the exact condition of the title was not disclosed by these letters, the only reasonable conclusion to be drawn from them is that Cummings knew Smith had some interest in the land, and was accepting the necessity of meeting the note to protect his interest. Therefore, before Cummings agreed to extend payment without the consent of the makers of the note, it was his duty to ascertain the true situation, and, even if it can be said the evidence did not go far enough to show full knowledge upon his part, it was sufficient to charge him with notice. The fact that the actual title was held by Mrs. Smith is immaterial." In Merrill v.

Reiners, 14 Misc. 583 (36 N. Y. Supp. 634), the court went so far as to hold that in extending the time of payment to a subsequent grantee the mortgagee was charged in law with knowledge that in the ordinary course there might be and probably were intermediate assumptions.

In the present case, in an opinion filed, the judge stated that under the evidence he was "obliged to find" that the mortgagee "knew the history of the transaction;" but there was no exception to this statement. It is not clear whether this statement was intended merely as a finding on an issue of fact or as a ruling that under the evidence the mortgagee was charged with knowledge as a matter of law; but under the assignments of error, the only question for decision as to this matter is whether the evidence was sufficient to authorize a finding of notice. We answer this question in the affirmative.

But it is insisted that the extension agreement related only to the balance due on the second note, the maturity of which was postponed for the period of one year, so as to concur with the maturity of the third or last. note, with reference to which no extension was expressly granted. Upon this premise, it is argued that if there was a release, it did not apply to the third note, and that since the proceeds from the sale of the property more than satisfied the second note and the amount sued for is merely a balance due on the third or last note, the plaintiff is bound to recover this balance, regardless of all other questions. There are decisions to the effect that an extension of time as to one installment will not operate to release a surety as to installments not yet matured, and not included in the extension agreement. We will not enter into a discussion of these decisions. Whatever may have been the facts or legal bases of such decisions, and regardless of their soundness, we are constrained to hold that under the law of this State, and under the peculiar facts of this case, the defendant was wholly released from liability,—a conclusion which does not infringe upon the decision by this court in *Alsobrook* v. *Taylor*, 181 *Ga.* 10 (181 S. E. 182). It is true that only the second note was expressly mentioned, but the mortgage was given to secure all of the notes, and was also included in the agreement, it being stipulated that the right of foreclosure would not be exercised for the period of one year. The mortgage provided in effect that if any one of the

notes was not paid at maturity the aggregate sum would at once become due and payable at the option of the mortgagee or his assigns. It further appears that the mortgage itself was the very thing assumed, both by Snyder and by Berry. The notes and the mortgage are to be considered merely as different parts of a single contract, and the extension of the mortgage, especially in view of the accelerating clause, affected the contract in every part. *Cocke* v. *Bank of Dawson,* 180 *Ga.* 714, 718 (180 S. E. 711). Berry in purchasing from Snyder assumed the contract in its entirety, and the transaction between the mortgagee and the investment company so changed the liability of Berry as between him and the mortgagee as to alter the nature of the assumption agreement entered into by Berry with Snyder, under which Snyder became a surety even as related to the mortgagee, when the latter, with knowledge of the facts, proceeded to deal with the investment company. The form of the contract is immaterial, provided the fact of suretyship exists. Code of 1933, § 103-104. "Any change in the nature or terms of a contract is called a novation; such novation, without the consent of the surety, discharges him." § 103-202. "Any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, shall discharge him." § 103-203. Where a surety suffers injury arising collaterally and not affecting the contract itself, "the discharge is only to the extent of the loss or injury, and, if that be not as great as the liability of the surety, then pro tanto." *Armour Fertilizer Works* v. *Kenney,* 161 *Ga.* 477 (131 S. E. 281). The principle regarding a release pro tanto has no relevancy, however, in the case at bar, because the act of the mortgagee affected the contract itself. Compare *Stallings* v. *Bank of Americus,* 59 *Ga.* 701. The case thus falls within the general rule that where a valid and binding extension is granted to the principal debtor without the consent of the surety, the latter is discharged. *Camp* v. *Howell,* 37 *Ga.* 312; *Scott* v. *Smith,* 37 *Ga.* 384; *Randolph* v. *Fleming,* 59 *Ga.* 776 (2), 779. If there is a change in the nature of the contract and it is made without the knowledge or consent of the surety, a release will result, regardless of injury. *Bethune* v. *Dozier,* 10 *Ga.* 235; *Taylor* v. *Johnson,* 17 *Ga.* 521; *Little Rock Furniture Co.* v. *Jones,* 13 *Ga. App.* 502 (2) (79 S. E. 375). So, under the facts of the instant case, and the find-

ing made by the trial judge as to the knowledge of the mortgagee, the extension of the second note and of the mortgage securing all of the notes operated to release the defendant Snyder altogether, and judgment was properly entered accordingly.

*Judgment affirmed. All the Justices concur.*