GILLIAM *et al. v.* McLEMORE *et al.*[*]

[106 So. 99.   No. 24965.]

(Division A.   Oct. 12, 1925.   Suggestion of Error Overruled Dec. 7, 1925.)

1. JUDGMENT. *Release. Mortgagor and his grantee assuming mortgage debt not joint debtors of mortgagee as to release or judgment.*

   Though grantees of mortgagor, by assuming in their deed to pay the mortgage debt, become liable to mortgagee, they do not thereby become joint debtors with mortgagor to mortgagee; so that Hemingway's Code, sections 2169, 2170 (Code 1906, sections 2682, 2683), as to effect of release of or of taking judgment against one joint debtor, are inapplicable.

2. RELEASE. *Surrender of possession before foreclosure good and valuable consideration for release from personal liability.*

   For grantees of mortgagor, who, by their deed, have assumed to pay the mortgage debt, to surrender the place to mortgagee before foreclosure, that he might retain tenants and do fall plowing, is a good and valuable consideration for mortgagee's release of them from personal liability.

3. RELEASE. *Of personal liability need not be in writing.*

   Mortgagee's release of mortgagor's grantee from personal liability for mortgage debt need not be in writing.

4. APPEAL AND ERROR. *Point raised for first time of validity of Sunday contract not considered.*

   Point of Sunday contract being void, not raised even inferentially below, will not be considered on appeal.

5. MORTGAGES. *Mortgagor's grantee, assuming debt with notice to and ratification by mortgagee, becomes principal, with mortgagor as surety; mortgagor released by extension or release of grantee.*

Grantee of mortgagor, by recital in the deed assuming the mortgage debt, becomes the principal debtor, with mortgagor as his surety, where mortgagee has notice of and ratifies the assumption, so that mortgagee, by extension of time to grantee, or release of him from personal liability, releases mortgagee.

### ON SUGGESTION OF ERROR.

6. APPEAL AND ERROR. *No presumption of verdict for certain defendants being influenced by erroneous peremptory instruction for other defendants.*

It cannot be assumed that erroneous peremptory instruction for certain defendants influenced the jury to find for other defendants, who had a different defense, on an issue between plaintiffs and them alone.

7. MORTGAGES. *Mortgagee's acceptance of mortgagor's grantee as primary debtor must be before change in relation to grantee's injury.*

Acceptance by mortgagee, as his primary debtor, of mortgagor's grantee in deed by terms of which grantee assumes to pay mortgage debt, must be before relation of the parties has been changed with relation to the subject-matter, to injury of grantee.

8. MORTGAGES. *Bringing of suit by mortgagee, after material change of status of parties, held not an acceptance of mortgagor's grantee as mortgagee's primary debtor.*

Assuming mortgagee can, by bringing suit, accept as his primary debtor a grantee of mortgagor, who by terms of his deed assumed to pay the mortgage debt, *held* that, where there were three grantees in the deed, and one of them, P., then conveyed to the others, who by the deed assumed to pay the mortgage, and thereafter mortgagee, by agreement with the two others and mortgagors, extended the mortgage, and later the mortgagee released the two others from personal liability, and then foreclosed, leaving a deficiency, suit for such deficiency, after such material change in the status of the parties, did not amount to acceptance of P. as a primary debtor.

---

*Headnotes 1. Mortgages, 27 Cyc., pp. 1345, 1352; Release, 34 Cyc., p. 1082; 2. Release, 34 Cyc., p. 1050; 3. Release, 34 Cyc., p. 1047; 4. Appeal and Error, 3 C. J., Section 593; 5. Mortgages, 27 Cyc., p. 1356, 1357, 1358; 6. Appeal and Error, 4 C. J., Section 2709 (Anno); 7. Mortgages, 27 Cyc., p. 1357; 8. Mortgages, 27 Cyc., p. 1357.

APPEAL from circuit court of Bolivar county, second district.

HON. W. A. ALCORN, JR., Judge.

Suit by J. B. Gilliam and others against G. B. McLemore and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

*Watson & Jayne* and *Clark, Roberts & Hallam,* for appellants.

As to the case against G. B. McLemore and C. R. Smith, makers of the notes sued on, the peremptory instruction requested by appellants should have been given. These makers of the notes sued on offered no valid defense either in their pleas or in their evidence. Sections 2169 and 2170, Hemingway's Code, and the cases thereunder annotated, settle this question.

As to Leslie Poe, this appellee along with appellees, J. L. Smith and H. Earl Smith, agreed to pay the notes sued on and the taxes on the plantation purchased by them, when they purchased Asia plantation from the other appellees, G. B. McLemore and C. R. Smith, accepted the deed therefor and enterd into the possession thereof. It is clear from the deed that this particular appellee, Leslie Poe, along with his co-grantees, assumed and agreed to pay the indebtedness sued on by specific reference thereto; and that this assumption was one of the conditions of the deed through which they took title to Asia plantation.

Appellants did not know of this transaction until long after its consummation; they had no part therein and did not give consent thereto. However, if they had been notified of the transaction or given their consent thereto, such would not have affected their rights. There were no restrictions in the deed from appellants to the other defendants, G. B. McLemore and C. R. Smith, with regard to the releasal of the property. There is no provision of law in this state restricting the right of alienation of lands subject to mortgage. Therefore, the grantors in

this particular deed had full right to convey to the grantees on any terms which appealed to them.

Appellants contend that Leslie Poe was liable on the notes sued on, under his assumption thereof. *Dodge* v. *Cutrer,* 56 So. 455, 100 Miss. 657, 27 Cyc. 1344, 39 Cyc. 1655; *Barnes* v. *Jones,* 71 So. 573. Under the foregoing authorities and the provisions of sections 2169 and 2170, Hemingway's Code, *supra,* appellants' cause was made made against this particular appellee, Leslie Poe, and the peremptory instruction requested by appellants should have been given.

As to appellees,. J. L. Smith and H. Earl Smith, the trial court should have given them the peremptory instruction requested to find for the appellants as against all of the appellees. The evidence as to the alleged releasal was insufficient to establish a contract of release. If the evidence was sufficient to establish a contract of release, the same was made on Sunday and, therefore, void. Section 1102, Hemingway's Code, and cases cited.

The alleged contract was without consideration and, therefore, void. Appellees attempted to show consideration for the alleged releasal contract by delivery of possession of Asia plantation before the end of the year 1923, so that appellants could make ready for the operation of the year 1924. This was no consideration because the condition of the mortgage had already been broken by the failure of the appellees to pay principal and interest for two years and appellees had the right of entry without having to purchase it. Section 2283, Hemingway's Code (section 2779, Code of 1906); *Smith* v. *Forbes,* 89 Miss. 141, 42 So. 382; *Elder* v. *Jones,* 106 Miss. 489, 64 So. 212.

*General Statement of Law.* Appellants contend that their right of recovery in this cause as to any or all of appellees is sustained by the application of sections 2169 and 2170, Hemingway's Code. These sections control in the instant case. See, also, *Baber* v. *Hanie,* 80 S. E. 57 (N. C.); *Gilmore* v. *Shearer,* 197 N. W. 631; *Bull* v. .

*Smith et al.,* 191 N. W. 624; *Wood* v. *Stevenson,* 217 Pac. 953; 20 Am. & Eng. Ency. of Law (2 Ed.), pages 989-990.

*Shands, Elmore & Causey,* for appellees.

The plaintiffs sold to C. R. Smith and G. B. McLemore a certain tract of land in Bolivar county, Mississippi, known as the Asia plantation. Shortly after the purchase, they sold the Asia plantation to J. L. Smith, H. E. Smith and Leslie Poe for some cash and the additional consideration of the absolute assumption by the grantees of the indebtedness of the grantors to plaintiffs and the solemn agreement of the said grantees to pay said indebtedness to the plaintiffs. Shortly after this transaction and for a good and valid consideration, Leslie Poe sold his interest to J. L. Smith and H. Earl Smith, a part of the consideration being the assumption of the indebtedness of C. R. Smith and G. B. McLemore to plaintiffs, which indebtedness Leslie Poe had theretofore assumed, agreed to pay and made his own indebtedness.

Plaintiffs predicate their rights for recovery against Leslie Poe upon the promise recited in the deed from C. R. Smith and G. B. McLemore to him and upon his promise to pay the debts of Smith and McLemore to plaintiffs. Plaintiffs predicate their rights of recovery against J. L. Smith and H. E. Smith upon this same promise and upon the promise for a valuable consideration made to Leslie Poe that they would pay the indebtedness, so in the suit we find plaintiffs seeking a recovery against five persons, on three distinct promises: The first promise being common to C. R. Smith and G. B. McLemore; the second being common to the other three defendants; the third promise being common to J. L. Smith and H. Earl Smith. All three promises were made at different times, for a different consideration, for different amounts, to different persons and evidenced by different instruments.

Plaintiffs contend that as a result of these transactions all five of the defendants became either joint or joint

141 Miss.—17

and several plaintiffs. Our contention is that they never at any time bore any such relation to the plaintiff, but that after the deed was made by C. R. Smith and G. B. McLemore to Leslie Poe, J. L. Smith and H. Earl Smith, the last three became the principal debtors and C. R. Smith and G. B. McLemore became sureties; that after the deed from Poe to J. L. Smith and H. Earl Smith, J. L. Smith and H. Earl Smith became the principal debtors and Leslie Poe became secondarily liable and C. R. Smith and G. B. McLemore became tertiarily liable.

That Leslie Poe, J. L. Smith and H. Earl Smith became liable to pay to the plaintiffs the amount of the indebtedness evidenced by the notes of C. R. Smith and G. B. McLemore is now, and has been for many years, settled law in Mississippi. *Bonds* v. *Jones,* 111 Miss. 337; *Dodge* v. *Cutrer,* 100 Miss. 647; *Lee* v. *Newman,* 55 Miss. 365; *Sweatman* v. *Parker,* 49 Miss. 19.

From a reading of these cases it will be seen that a liability arises against the grantee to pay this debt, not for the consideration which was the bases of the promise of the grantor, but for an independent consideration, which is evidenced not by the original note but is evidenced by the instrument in which the promise of the grantees is recited—that is, in the deed—and there is a liability upon the grantees in the deed regardless of the validity of the first note. This seems to be almost universally settled. 2 Devlin on Real Estates in Deeds (3 Ed.), sec. 1056, states the rule very tersely and recites many authorities to sustain it. See, also, *Calvo* v. *Davies,* 29 Am. Rep. 130, the leading case on the subject; *Braun* v. *Crew,* 192 Pac. 531; *Nelson* v. *Brown,* 41 S. W. 960. The only criticism of this doctrine is in *Connecticut Mutual Life Ins. Co.* v. *Mayer,* 8 Mo. App. 18. Cases from different courts which follow *Calvo* v. *Davies* are; *Ward* v. *Deoca* (Cal.), 52 Pac. 130; *Stuyvesant* v. *Mort. Co.* (Colo.), 43 Pac. 144; *Colchestu Bank* v. *Brown* (Conn.), 52 Atl. 316; *Brosseau* v. *Lowrey* (Ill.), 70 N. E. 901; *Woeley* v. *Hineman* (Ind.), 33 N. E. 260; *Santee* v. *Keefe* (Iowa), 102 N. W. 803; *Munsell* v. *Beals* (Kans.), 46 Pac.

984; *Cumberland Nat. Bank* v. *St. Clair* (Me.), 44 Atl. 123; *Franklin Bank* v. *Cochran* (Mass.), 66 N. E. 200; *Warner* v. *Williams* (Md.), 49 Atl. 559; *Alt* v. *Bouholzer*, 36 Minn. 57; *Winona* v. *Wilkie* (Mich.), 1 N. W. 1049; *Pratt* v. *Conway* (Mo.), 49 S. W. 1028; *Flieschmann* v. *Doctener*, 2 Abb. N. C. 373; *Merriam* v. *Miles* (Neb.), 74 N. W. 861; *N. Y. L. Ins. Co.* v. *Casey* (N. Y.), 79 N. E. 916; *Poe* v. *Dixon* (Ohio), 54 N. E. 86; *Y. M. C. A.* v. *Portland* (Ore.), 55 Pac. 439; *Blood* v. *Crow* (Pa.), 35 Atl. 871; *Iowa Co.* v. *Schnose* (S. D.), 103 N. W. 22; *McKay* v. *Ward* (Utah), 57 Pac. 1024; *Moore* v. *Triplett* (Va.), 32 S. E. 50; *Stites* v. *Thompson* (Wis.), 73 N. W. 744; *U. M. Life Ins. Co.* v. *Hanford* (U. S.), L. Ed. 118.

Having now established the *status* of the parties, we may safely undertake a solution of the questions involved, the first of which is to determine whether or not the peremptory instruction in favor of C. R. Smith and G. B. McLemore and Leslie Poe was properly given by the court. Plaintiffs knew that J. L. Smith and H. Earl Smith had become the principal debtors and C. R. Smith and G. B. McLemore sureties. Notwithstanding this, on January 10, 1923, without conferring with C. R. Smith and G. B. McLemore, they entered into an agreement with J. L. Smith and Calhoun Wilson, president of the Yazoo Delta Mortgage Co., which was a binding obligation for an extension of time for the payment of part of this indebtedness thus assumed. In this particular it was made for a valid and valuable consideration; to-wit, the forbearance of the Yazoo Delta Mortgage Co. of their rights to foreclose the personal property owned by and necessary to J. L. Smith to enable him to cultivate the Asia plantation.

An extension of time without the consent of the surety and for a valuable consideration operates to discharge the surety. *Powell* v. *Tomlinson,* 92 So. 226; *Scott* v. *Gunn Rice Lumber Co.,* 116 Miss. 524; *Calvo* v. *Davies,* 29 Am. Rep. 130; *Nelson* v. *Brown,* 41 S. W. 960; *Braun* v. *Crew,* 192 Pac. 531.

As to the judgment in favor of J. L. Smith and H. Earl Smith, appellant contends that thus judgment should be reversed, but there was sufficient evidence to go to the jury as to an agreement made between Blum, Goldstein and Gilliam on one part and J. L. Smith and H. Earl Smith on the other; and this issue was by the instruction for the defendant fairly and squarely submitted to the jury.

Appellants say that even if the evidence was sufficient to establish a contract of release, the same was made on Sunday and, therefore, void. In reply to this, I will say that no such issue was made by the pleadings in the court below, nor was any such issue submitted to the jury, nor was the trial court requested to charge the jury on any such issue; and not having been raised in the court below by pleadings, requested instructions or objections to the testimony, it cannot be now raised here. But even if it could, the testimony is to the effect that the only agreement made on Sunday was to the effect that Gilliam might go up and talk to the labor on the place, and on other days the agreements were had that these defendants should be released from all indebtedness of any and every kind to Blum and Goldstein. Objection must be seasonably and specifically made and appellent should undertake to present no issue in the supreme court which was not specifically presented in the court below. *Davies v. State,* 104 So. 610.

Appellant contends that the alleged contract was without consideration and, therefore, void. Plaintiffs say that after conditions were broken, plaintiffs were entitled to the immediate possession and cite as authority therefor two cases neither of which is an authority in the case at bar. No right of possession is given by the terms of this instrument to plaintiffs at all. There was no way known to the law to put these defendants out of possession before the end of the crop year.

The question as to whether or not the plaintiffs for a sufficient consideration agreed to and did release J. L. Smith and H. Earl Smith was fairly submitted to the

jury. The jury by their verdict on the facts found that they were released. There is sufficient evidence to sustain this verdict. This being established, whether the extension of time released C. R. Smith and G. B. McLemore or not, as sureties they were released by the releasal of the principal debtors. See Devlin on Deeds, sec. 1058, *Union Life Ins. Co.* v. *Hanford,* and authorities cited hereinabove as to the effect of an extension of time.

The judgment herein appealed from should be affirmed.

McGOWEN, J., delivered the opinion of the court.

Gilliam, Blum, and Goldstein filed their bill in the chancery court of the first district of Bolivar county, Miss., against the defendants G. B. McLemore, C. R. Smith, J. L. Smith, H. E. Smith, and Leslie Poe, asking for a judgment against the defendants for about one hundred ninety-four thousand dollars, based upon notes of McLemore and C. R. Smith afterwards assumed by the other defendants. Upon motion the chancellor removed the case to the circuit court of that county, and declaration was filed setting up the sale of the Asia plantation by the plaintiffs named above to G. B. McLemore and C. R. Smith for a consideration of seventy-five thousand dollars cash and eleven promissory notes totaling four hundred thousand dollars, together with interest notes running through a series of ten years, deferred payments being secured by a deed of trust on the Asia plantation, which deed of trust contained the following provision as to sale on default of payment:

"But if we shall fail to pay the said notes or any of them when due, then the said E. N. Goldstein, J. B. Gilliam, and Jennie S. Blum, or whoever may be the holder of said notes or any of them, may declare all of said notes at once due and payable, and the said Percy Bell, trustee, is hereby authorized to enter upon and take possession of the said property, and with or without taking possession to sell said property at public outcry to the

highest bidder for cash after having first advertised,''
etc.

The last of the above series of notes was due on January 20, 1930.

On October 2, 1919, said G. B. McLemore and C. R.
Smith conveyed Asia plantation by deed to J. L. Smith,
H. Earl Smith, and Leslie Poe for a consideration of
two hundred twenty-five thousand dollars cash, and the
further consideration that the grantees, J. L. and H. E.
Smith and Leslie Poe, obligated themselves to and did
assume and agree to pay all the indebtedness owing to
Gilliam *et al.* on said plantation according to the tenor
and effect of the notes evidencing the indebtedness
secured by the trust deed above described; that the
grantees J. L. and H. E. Smith and Leslie Poe accepted
the deed with all of the recitals therein and took possession of the property.

The declaration further alleged default in the payment
of the principal and interest notes, default in the payment of taxes, so that upon said original obligation there
was due principal, taxes, interest, and attorney fees
aggregating three hundred fifty-four thousand four hundred forty-two dollars and two cents. It was further
averred that the trust deed had been foreclosed and the
lands described therein sold for the sum of one hundred
sixty thousand dollars; that the expense of the sale was
one hundred ninety-two dollars and fifty-five cents, leaving one hundred fifty-nine thousand eight hundred seven
dollars and forty-five cents out of the proceeds of said
sale applied to the indebtedness, and, deducting same
from the indebtedness, there remained due on said indebtedness the sum of one hundred ninety-four thousand
six hundred thirty-four dollars and fifty-seven cents. To
this declaration the defendants pleaded the general issue, and gave notice that they would introduce evidence
on the trial to show that as one hundred seventy-five
thousand dollars cash and a large amount of interest
had been paid, and, as appellees J. L. Smith and H. E.
Smith and Leslie Poe had assumed and agreed to pay

the notes sued on secured by the trust deed by consent of plaintiffs, the defendant Leslie Poe conveyed his interest in said lands to the defendants J. L. and H. E. Smith, and was by the plaintiffs released from any liability whatsoever to appellants on account of these notes.

Notice was further given that the amount paid on the purchase price was much more than a fair rental value during the time the defendants were in possession, acknowledged so to be by plaintiffs, and they expressed themselves as satisfied with their bargain provided they got back the lands and retained the amount paid, and that, in line therewith, during the fall of 1923, the plaintiffs proposed to J. L. Smith and H. E. Smith that if the Smiths would return the possession of this land over to appellants before the foreclosure thereof so that they could retain tenants and secure others on the place, do fall plowing, and sell them certain property belonging to J. L. and H. E. Smith, they would release the said Smiths from any liability on account of any balance due on the purchase money notes secured by the deed of trust after the same should be credited with the proceeds of the sale of the lands under the trust deed; that this proposition was accepted by the Smiths and the plantation delivered to the plaintiffs immediately without foreclosure proceedings, and the personal property was delivered, and that the Smiths were paid in cash the purchase price agreed for the personal property, and that they, the Smiths, were thereby released from liability on account of any deficiency. This notice was traversed by the plaintiffs, and the plaintiffs contended that they had a right to the possession of the land at the time they went in possession, and that the property was delivered to appellants without any such agreement.

We shall only state such portions of the evidence as occur to us material to a decision of this case. The plaintiffs on the trial admitted that they knew of the sale by McLemore and Smith to J. L. Smith and H. E. Smith, but denied that they ever heard of Poe in the transac-

tion. And on the 6th day of July, 1921, the plaintiffs and all the defendants, including McLemore and Smith, entered into an extension agreement, which was concurred in by the Planters' Bank of Clarksdale, who were interested in the Smiths, having a mortgage on the personal property of the Smiths then on the plantation, including the crops; in which agreement the notes and mortgage heretofore mentioned were described in detail, and this agreement is ample notice to plaintiffs that the Smiths were in possession of the lands and of the *status* existing between McLemore et al and the Smiths.

The grantee Leslie Poe was not a party to this agreement, took no part therein, he having conveyed his interest to J. L. and H. E. Smith before that time.

Later, on January 10, 1923, Calhoun Wilson, president of the Planters' Bank of Clarksdale, wrote a letter to Gilliam *et al.* in effect confirming an agreement reached theretofore that Gilliam *et al.* would advance J. L. Smith twenty thousand dollars with which to make a crop on Asia plantation in 1923, Gilliam *et al.* to take a trust deed on the crop to secure the twenty thousand dollars advanced, and also to secure eighteen thousand dollars interest note then past due; the interest note to be extended, and the Clarksdale Bank in consideration thereof was to permit the personal property to remain on the place during the year 1923, and was to get anything over the thirty-eight thousand dollars above mentioned which the Smiths might make.

Gilliam *et al.* denied making any contract to release J. L. and H. E. Smith from the McLemore and Smith indebtedness in consideration of their being turned into immediate possession of Asia plantation in the fall of 1923, and before any foreclosure proceedings were had.

Leslie Poe, in a few weeks after becoming grantee of McLemore and Smith, conveyed by a warranty deed to his co-grantees, J. L. and H. E. Smith, Asia plantation. J. L. and H. E. Smith paid some cash, a small farm, and agreed to pay the original purchase money notes.

The plaintiffs Gilliam *et al.* admitted that they went into possession of Asia plantation some time in November, a month or more before the foreclosure sale was had, but say that the Smiths threw up the place. The defendants J. L. Smith and H. E. Smith swore that Gilliam *et al.* agreed to release them, the Smiths, from all obligations if they would put them in possession; that Gilliam *et al.* said they were looking to McLemore and Smith, and were not looking to them, and did not regard them as purchasers at all; did not know them as purchasers of the place, and did not sell to them, but would release them from all liability if given immediate possession. They testified that one of the plaintiffs went that evening to look the place over and see about the hands with their permission and that a few days later they put the plaintiffs in full possession, selling to the plaintiffs some personal property not covered by their mortgage, and receiving some cash on a draft and credit on account from the plaintiffs. They said that in the conversations it was agreed that they were not to be held for any further accounting, and not to be interested in the matter any further, and that a written release was unnecessary because they, Gilliam *et al.* did not sell to them. Upon this state of facts the plaintiffs asked for a peremptory instruction as against all and each one of the defendants, which was refused by the court. Then the defendant Leslie Poe asked for and was granted a peremptory instruction.

Likewise a peremptory instruction was granted in favor of C. R. Smith and G. B. McLemore, and the court submitted to the jury the one issue of whether or not they believed from the evidence that plaintiffs agreed to release H. L. and H. E. Smith from any further liability on the notes sued on. Upon this issue the cause was submitted to the jury, and a verdict returned in favor of J. L. and H. E. Smith; and the plaintiffs below prosecute an appeal to this court.

Plaintiffs contend that McLemore and Smith, the makers of the notes sued on, are liable, because they say

that McLemore and Smith were not released and could not be released because of sections 2169 and 2170, Hemingway's Code (sections 2682 and 2683, Code of 1906). Section 2169, Hemingway's Code, is the statute as to the effect of releasing one or more joint debtors. And section 2170, Hemingway's Code, is to the effect that a judgment against one joint debtor does not affect the rights against the other joint debtor. We shall dismiss this theory of the case with the statement that this state of facts detailed herein does not create the situation of joint debtors as between McLemore and C. R. Smith on the one hand and their grantees on the other hand, in so far as the plaintiffs Gilliam *et al.* are concerned. J. L. and H. E. Smith and Leslie Poe never signed any sort of contract with the plaintiffs in this case.

It is true that under the authority of the cases of *Dodge* v. *Cutrer,* 100 Miss. 657, 56 So. 455, and *Barnes* v. *Jones,* 111 Miss. 337, 71 So. 573, that the assumption on the part of J. L. and H. E. Smith and Leslie Poe to pay the indebtedness of McLemore and Smith to the plaintiffs did create such liability, in so far as plaintiffs were concerned, as to make them, by virtue of their contract with their grantors, the debtors of the plaintiffs, and subject to suit thereon, to the end that their contract in their deeds, assuming to pay the mortgage indebtedness of plaintiffs' grantee, might be enforced.

Having carefully read the testimony submitted to the jury as to whether or not the surrender of the plantation, four thousand acres, in the fall before foreclosure, was a good and valuable consideration on which to base a valid release, it is a matter of common knowledge that in the fall months the tenants on the place threatened with foreclosure become dissatisfied and move to places where they know who will be landlord. It is also generally known that, under the system of farming in the Delta portion of this state, much of the labor of making the crop is done in the fall before Christmas, weather conditions permitting.

In addition to that, it was most probable that the defendants could not be ousted of possession if resort was had to foreclosure proceedings before the 1st of January of the ensuing year. So that, considering the size of the plantation, the maintenance of the morale of the labor, and the intrinsic rental value of the place at the time, we are bound to conclude that this constituted a most valuable right to thus be enabled to go in possession without the hinderance and delay incident to foreclosure proceedings. True the plaintiffs stoutly deny the making of any such agreement, but the Smiths just as stoutly declare the agreement was made. We know no law requiring such a release to be reduced to writing, so that we are of the opinion that the court properly submitted to the jury the question of whether or not such a release had been entered into by J. L. and H. E. Smith and the plaintiffs, and, the jury having found for the defendants, no substantial reason is advanced in the briefs of counsel, or occurs to us, for reversing the verdict of the jury, even though we might not have so found had we sat as jurors.

Something is said in the briefs about a Sunday contract being void. That point was not raised directly or inferentially in the court below, and will not be considered by the court here in the decision of this case, and, in addition, it is urged that the contract was not finally consummated on Sunday.

In this state of the case we are faced with the proposition that Gilliam *et al.* released J. L. and H. E. Smith from the obligation herein. That being established, what is the *status of* McLemore, C. R. Smith, and Leslie Poe?

There are three lines of authorities upon the question here submitted to us:

First, is that where a mortgagor has conveyed to his grantee with recital in the deed that the subsequent grantee assumes to pay the mortgage debt to the original mortgagee, that the mortgagee, having notice thereof as between the mortgagee and mortgagor and subsequent

grantees, the relation of debtor and creditor exists, and suit may be brought by him against one or all of the grantees, but the mortgagee is not bound by the relation created between the mortgagor and his vendee.

Second, that, on the state of facts here before us, the mortgagee can be required to treat the grantor or mortgagor as a surety if he has notice of and ratifies the sale and assumption of the mortgage indebtedness.

Third, that the subsequent grantees became the principals, the mortgagors the sureties, and the mortgagee must so deal with them without regard to whether there has been notice of ratification or not.

As we understand appellants, they contend for the first proposition that the right to sue directly the subsequent grantees and the mortgagor is in the mortgagee, and that he does not deal with the subsequent grantees as being the principal of the mortgagor or grantor. In support of that position he cites Devlin on Deeds, section 1060, presenting the view that the relation of surety does not affect the mortgagee, which sustains the proposition for which he contends, citing *Conn. Mutual Life Ins. Co. v. Mayer,* 8 Mo. App. 18, and the author Devlin favors the view that the relation of suretyship should not affect or involve in its consequences the mortgagee so as to compel him to treat the mortgagor after the sale as he would have been compelled to deal with him had he originally assumed the relation of a surety. Counsel also cite Am. & Eng. Ency. of Law (2 Ed.), vol. 20, p. 997, in which the text referring to this question states that "such new relation does not bind the mortgagee. He may disregard the arrangement and bring his action against his original debtor, or he may regard the assumption of the grantee as providing an additional remedy and bring his action also against him. The transaction, as to him, is cumulative rather than substitutional." And in subsection (b) the text-writer holds that it is the duty of the mortgagee to respect the new relation, saying:

"The rule which releases a surety is founded upon equitable considerations and does not arise from any-

thing contained or implied in the original contract. The duty to regard all known and proper relations between others with whom he is dealing is, therefore, a positive rule of law which may operate in the supposed case to discharge the old debtor and to substitute a new one without any intention upon the part of the creditor to bring about such a result, or even in contravention of a contrary intention.''

However, the same text-writer on page 998, subscription (c), sets out the doctrine for which appellant contends:

''Other courts, for reasons which appear equally cogent, reject this doctrine, and hold that the mortgagor is unable by dealings with others to affect in any way his own liability upon his original contract. It is argued that any arrangement between the mortgagor and his grantee is, as to the mortgagee, *res interalios acta*. Having made a specific contract with the mortgagor, the mortgagee may continue to hold him as principal and may ignore any and all arrangements made with strangers for his own convenience.''

And in the notes cites Illinois, Iowa, Maryland, Nebraska, New Jersey, and Utah cases, and reciting that in New Jersey the lower courts enforce one rule and the equity the other.

The appellees contend for the rule that obtains in a vast majority of the courts that the mortgagor becomes the surety, subsequent grantees become principal, and that, where this relation is known and ratified by the mortgagor, the mortgagee must be treated by him as a surety, and his release of the principal or subsequent grantees will operate to release the principal or mortgagor.

In our own state it is well settled that the subsequent grantees become primarily liable, by virtue of the assumption in the deed accepted by them, to the original mortgagee. See *Sweatman* v. *Parker*, 49 Miss. page 19, wherein it was held that such an assumption would be an original undertaking and not necessary to be evidenced

by writing, and that the statute of frauds prohibiting one from being held to answer for the debt, default, or miscarriage of another would not apply. See, also, *Lee* v. *Newman,* 55 Miss. page 365; *Dodge* v. *Cutrer,* 100 Miss. 647, 56 So. 455; *Barnes* v. *Jones,* 111 Miss. 337, 71 So. 573. If, then, the subsequent grantees become primarily liable, and their assumption to pay is not in writing signed by them, the statute of frauds does not apply, we must hold that the mortgagor, the grantor, becomes surety for his grantee, and a release of his principal would release him. Devlin on Deeds (3 Ed.), vol. 2, sections 1056, 1056a, 1057, and 1058, are to the effect that the purchaser on assuming the mortgage of his grantor thereby becomes principal debtor and the mortgagor a surety merely, and a release of the principal is a release of the said surety, citing numerous cases from the supreme courts of more than twenty states, and citing the case of *U. M. Life Ins. Co.* v. *Hanford,* 143 U. S. 187, 12 S. Ct. 437, 36 L. Ed. 118, from the supreme court of the United States.

Mr. Devlin quotes in a note under section 1060 from an opinion of the Missouri court (*Connecticut Mut. Life Ins. Co.* v. *Mayer,* 8 Mo. App. 18) a criticism of the case of *Calvo* v. *Davies,* 73 N. Y. 211, 29 Am. Rep. 130, a New York case, in which that court subsequently said that the Calvo case "seems to stand alone." However, the Missouri court returned to and adopted the case of *Calvo* v. *Davies.* So that after all the text of Devlin's criticism does not seem to be supported by the authorities. In the well-reasoned and well-considered case of *Nelson* v. *Brown,* 140 Mo. 580, 41 S. W. 960, 62 Am. St. Rep. 755, from the Missouri court, that court said:

"As between the mortgagor and the grantee, the grantee becomes the principal debtor, primarily liable for the debt, and the mortgagor becomes a surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors, and may enforce the liability against either, still, after receiving notice of

the assumption, he is bound to recognize the condition of suretyship, and to respect the rights of the surety in all of his subsequent dealings with them. Payment, therefore, by a grantee who has assumed the entire mortgage debt, completely extinguishes the mortgage. He cannot be subrogated to the rights of the mortgagee, and keep the mortgage alive for any purpose. While the mortgagee may release the mortgagor without discharging the grantee, his release of the grantee, or his valid extension of the time of payment to the grantee without the mortgagor's consent, would operate to discharge the mortgagor. In short, the doctrines concerning suretyship must control the dealings between these three parties.''

Which is but a rescript of Mr. Pomeroy's statement of the rule, which we here now adopt and set out in full:

''The mortgagor may not only convey the premises 'subject to' the mortgage; he may also convey them in such a manner that the grantee assumes the payment of the mortgage debt, and thus renders himself personally liable therefor. The element which lies at the bottom of such assumption, and which alone gives it efficacy according to the theory held by some courts, is the fact that the mortgage debt is included in the purchase price as a constituent part thereof, and the grantee actually pays or secures to his grantors only the balance of the gross price after deducting such debt. No particular form of words is necessary to create a binding assumption; it is sufficient that the language shows unequivocally an intent on the part of the grantee to assume the liability of paying the mortgage debt, but this intent must clearly appear. When the deed executed by the grantor contains a clause sufficiently showing such an intent, the acceptance thereof by the grantee consummates the assumption, and creates a personal liability on his part, which inures to the benefit of the mortgagee as though he had himself executed the deed. When a grantee thus assumes payment of the mortgage debt as a part of the purchase price, the land in his hands is not

only made the primary fund for payment of the debt, but he himself becomes personally liable therefor to the mortgagee or other holder of the mortgage. The assumption produces its most important effect, by the operation of equitable principles, upon the relations subsisting between the mortgagor, the grantee, and the mortgagee. As between the mortgagor and the grantee, the grantee becomes the principal debtor primarily liable for the debt, and the mortgagor become a surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship, and to respect the rights of the surety in all of his subsequent dealings with them. Payment, therefore, by a grantee who has assumed the entire mortgage debt completely extinguishes the mortgage; he cannot be subrogated to the rights of the mortgagee, and keep the mortgage alive for any purpose. While the mortgagee may release the mortgagor without discharging the grantee, his release of the grantee or his valid extension of the time of payment to the grantee without the mortgagor's consent would operate to discharge the mortgagor. In short the doctrines concerning suretyship must control the dealings between these three parties. When land is thus conveyed with an assumption of a mortgage by the grantee contained in the deed subsequent grantees holding under the conveyance are charged with notice, and the land continues to be the primary fund for payment, as though the fact were recited in their own deeds. In the foregoing statement of the general doctrine, it has been supposed that the grantee assumes payment of the whole mortgage. If a grantee, in purchasing a part of the mortgaged premises, assumes payment of a part of the mortgage, he becomes personally and primarily liable only for such part. The general doctrine is well settled that a grantee who thus assumes payment, in whole

or in part, of a mortgage as a portion of the purchase price of the land conveyed to him cannot contest the validity of the mortgage on any ground and thus evade the liability which he has assumed." 3 Pomeroy's Equity Jurisprudence (4 Ed.), par. 1206, and the authorities there cited.

It follows that if the grantee becomes primarily liable to the mortgagor, without any written agreement between them, that the law of suretyship must be applied. This rule is supported by the great weight of authority, and has been recognized and applied by the supreme court of the United States in the *Hanford case* cited, *supra.*

To sum up, we hold in this case that J. L. and H. E. Smith became the principal debtors by virtue of a deed accepted by them from McLemore and Smith, in which the grantees bound themselves and assumed to pay the mortgage debt of McLemore and Smith against the lands described in the deed and embraced in the mortgage from McLemore and Smith to Gilliam *et al.*, and that, Gilliam *et al.* having acquiesced in this arrangement by making an agreement signed by all the parties to this record except Poe, and subsequently, as found by the jury, releasing the subsequent grantee, by virtue of said release the mortgagors became and were thereby released from liability; in other words, that in such state of case the law of suretyship is applied rigidly. It is hardly necessary to cite authorities that an extension of time to the principal or release of the principal without the consent of the surety will release the surety, and it is not contended that such is not the law. .

Having reached this conclusion as to the law of the case, we are led to say that by the verdict of the jury J. L. and H. E. Smith were released by the plaintiffs, the principals, and the other parties defendant, being sureties, are thereby released.

The judgment of the court below is affirmed.

*Affirmed.*

141 Miss.—18.

## On Suggestion of Error.

We are presented with two suggestions of error by different firms of lawyers, presenting two distinct theories upon which it is thought this court erred.

First. Assuming to be correct our holding that, when a mortgagor conveys mortgaged premises to a purchaser and such purchaser in the deed to him assumes to pay his grantor's mortgage debt, said purchaser becomes primarily liable for the debt thus assumed, upon the acceptance or ratification of the situation thus created by the original mortgagee. It is now urged that the court, having erred in granting a peremptory instruction to C. R. Smith, G. B. McLemore, and Leslie Poe, and at the same time the issue as to whether J. L. Smith and H. E. Smith had been released verbally by Gilliam *et al.* or not, told the jury that the jury were influenced by this error in granting a peremptory instruction in favor of McLemore *et al.* to find the verdict in favor of J. L. and H. E. Smith, and that therefore, for this error, the court should reverse and remand the case for a new trial upon the issue of whether or not J. L. and H. E. Smith were released by the verbal agreement set up by them as a defense to the suit.

This very plausible and ingenious presentation of the contention that an error in favor of one joint defendant whose defense was separate should operate in favor of the other defendant who had a different defense, it having resulted that this court held the second defendant's successful defense operated to release the first defendant, is presented with some force, but without citation of authority to support the same.

J. L. and H. E. Smith had no concern, so far as the issue then on trial before the court was concerned, with whether Gilliam *et al.* were released or not. The sole issue submitted to the jury was as stated above, and for us to say that the granting of the peremptory instruction wrongfully to McLemore *et al.* prejudiced the jury, in deciding the issue submitted to them in favor of J. L. and

H. E. Smith, we should be compelled to say that the jury had been influenced by that which had not been submitted to them and to impute to them bad faith, which we are not permitted to do until that clearly appears in a given case, which is not here made.

The argument that the jury were influenced by a peremptory instruction given other defendants, while possible but *a fortiori* the fact that McLemore and Smith who had paid an immense amount cash on this place would be interested in Smith's securing a verdict on the issue, most likely would have been stronger with the jury in rendering the verdict they did in favor of Smith, in order that McLemore might surely be released from what might have appeared to the jury to be a just adjudication of the situation. But neither of these views are tenable or permitted, being mere speculation, because presumably the jury tried the case on the testimony and the instruction of the court on the issue submitted to them. So that we think this contention cannot be sustained.

Second. The other suggestion of error may be stated thus: That the defendant, Leslie Poe, received scant attention from the court in the main opinion, and this is true. But he was scarcely mentioned in the briefs of counsel, or in the evidence taken in the case, and that error was committed in not holding that the plaintiffs were entitled to recover from Leslie Poe the full amount of the mortgage debt assumed by him in the deed made to him and accepted by him.

It will be remembered that Gilliam, Blum, *et al.*, conveyed lands to McLemore and Smith, and gave a mortgage to their grantors for the balance of the unpaid purchase money, and thereafter in turn McLemore and Smith conveyed the same lands to Leslie Poe, J. L. and H. E. Smith, who accepted from McLemore *et al.* a deed in which they assumed to pay McLemore and Smith's mortgage debt to Gilliam, Blum, *et al.;* and thereafter in turn Leslie Poe conveyed the same land to his associates, J. L. and H. E. Smith, with the provision that he should

pay the original mortgage debt to Gilliam, Blum, *et al.* Thereafter all of the above parties named, except Leslie Poe, entered into an extension contract by which Gilliam, Blum, *et al.* extended the time of payment, to which written extension contract Leslie Poe was not a party. Thereafter, according to the decision of this court, affirming the judgment rendered upon the verdict of the jury, Gilliam, Blum, *et al.* released J. L. and H. E. Smith verbally for a valuable consideration, and Gilliam, Blum, *et al.* entered upon the land, the subject-matter of the mortgage debt, and took possession thereof sometime before foreclosure. Then in a short time Gilliam, Blum, *et al.* proceeded to have foreclosed their mortgage, and, after having bought in the property, leaving a balance unpaid of one hundred ninety-four thousand six hundred thirty-four dollars, after applying the proceeds of the sale to the mortgage debt.

It will be noted that Leslie Poe offered to become primarily liable for this debt along with J. L. and H. E. Smith; that plaintiffs, Gilliam, Blum, *et al.,* never knew in fact that Leslie Poe had made this offer until the filing of the declaration in this case. In the meantime Poe's offer to pay the debt and become primarily liable therefor had been changed, and there had been substituted therefor J. L. and H. E. Smith's offer to become primarily liable therefor, and Poe to become surety therefor, which offer of J. L. and H. E. Smith was accepted by the plaintiffs, Gilliam, Blum, *et al.,* as evidenced by their extension agreement. This is one material change in the *status* of the parties after Poe's offer to become primarily liable.

The next change is that the plaintiffs released J. L. and H. E. Smith at a time when they did not know that Poe had ever been liable to them. The next important change is that the lands were sold by foreclosure under the mortgage, which resulted in a balance as stated above. After these important changes in the *status* of the par-

ties had taken place, can Poe be held liable because of a ratification evidenced only by the bringing of this suit?

We think it is absolutely sound in law to hold that there must be an acceptance by the mortgagee of the proposition as made by the grantee on the terms and under the conditions of the proposition, and that the accept-ance must take place before the relation of the parties has been changed, with reference to the subject-matter to the injury of the grantee. As we stated in the original opinion, there is a line of authority which holds that, upon the assumption of the mortgage debt by accepting a deed containing a clause of assumption, the grantee be-comes primarily liable without notice to the mortgagee. But we declined to follow this line of decisions, and held that acceptance and notice was necessary to create the relation of primary debtor between the subsequent gran-tee and the mortgagee.

Conceding that the bringing of a suit would be an acceptance by the mortgagee of the subsequent grantee as his primary debtor, certain it is that the want of knowledge of the situation on the part of the mortgagee cannot be availed of to make a new contract for the gran-tee, a wholly different contract, with a wholly different liability, with no prospect of recoupment, with no chance to protect himself in dealing with those who become his principals, with no chance to protect himself as to the ex-tension of agreement. We are constrained to say that the bringing of a suit under such conditions was not an acceptance of Leslie Poe as a primary debtor. It comes too late, unfortunate though it may be. We take the record here at face value, but it is passing strange that the agreement could be entered into between all the par-ties except Poe, and the several deeds passing under re-view, and the very deed by which it is sought to bind Poe escaped the attention of the grantees, the plaintiffs here. In *W. U. Tel. Co.* v. *Douglass,* 104 Tex. 66, 133 S. W. 877, we find this statement: ''A plaintiff, who sues upon a

contract executed by another for his benefit, must, of course, accept the contract as it was made.''

Likewise in *Blake* v. *Bank*, 33 R. I. 464, 82 A. 225, 39 L. R. A. (N. S.) 874, the court said: ''However, the third person acquires no rights under the promise made for his benefit until he accedes to it. It must clearly appear, by suit brought upon the agreement or in some other manner, that the third person knows of the promise in his favor, or the assumption by a stranger of the debt due to him, accepts the new agreement, and assents to its terms. Until such circumstances appear, showing accession on his part, the third person is not in position to avail himself of any benefit under the agreement. Before such accession on his part, his right to insist upon the performance of the promise in his favor may be lost by revocation or release between the parties to the agreement, or by the intervention of the rights of others. *Wood* v. *Moriarty,* 16 R. I. 201, 14 A. 855.''

We are contended to rest this matter on the statement that the bringing of this suit after the release of J. L. and H. E. Smith, Poe's co-grantees, and the foreclosure of this mortgage, was not an acceptance of the offer to pay the debt made by Leslie Poe, and that it is too late, after the *status* of the parties had been changed materially, after there has been a revocation or release in part of the very agreement to which he was a party, then to accept Poe as a primary debtor.

The suggestion of error is overruled.

                                            *Overruled.*