STAPLER, executrix, *v.* ANDERSON *et al.*

No. 9417.   July 11, 1933.   Rehearing denied August 9, 1933.

*Ryals, Anderson & Anderson,* for plaintiff.

*Park & Strozier,* for defendants.

Atkinson, J.   In this State there is a difference between a deed to secure a debt, which conveys legal title to the grantee, and a mortgage, which merely creates a lien upon the mortgaged property; but for the purposes of this case the difference is immaterial, and for convenience in answering the question propounded by the Court of Appeals "A" will in some instances be referred to as "the mortgagor" and "B" as "the mortgagee" and "C" as "the grantee."

In 19 R. C. L. 373, § 143, it is stated:   "Where the grantee of mortgaged premises assumes and agrees to pay the mortgage, he becomes at least as to the mortgagor the principal debtor, the latter occupying the position of surety."   See also § 145.   In § 156 it is stated as the general rule that "An agreement for an extension of time, entered into between the mortgagee and a grantee who has assumed the mortgage, will, if valid and made on sufficient consideration, so as to be legally enforceable, discharge the original mortgagor or intermediate grantees who may likewise have assumed the mortgage, unless the extension is assented to by the mortgagor or intermediate grantee."   Referring to the minority rule, it is stated in § 158:   "The view is taken in some jurisdictions that though, as between themselves, the original mortgagor and his grantee, who assumes the mortgage, may sustain the relation of principal and surety, as to the mortgagee both are principals, severally liable, and therefore that an extension of time to the one will not release the other."   A leading case announcing the general rule is Calvo *v.*

Davies, 73 N. Y. 211 (29 Am. R. 130), in which it was held: "When a grantee covenants to pay a mortgage on the granted premises, executed by the grantor, the relation of principal and surety arises; and an extension by the mortgagee of the time of payment of the mortgage, without the mortgagor's consent, releases the grantor from personal liability." See also George *v.* Andrews, 60 Md. 26 (45 Am. R. 706, 710). In Codman *v.* Deland, 231 Mass. 344 (121 N. E. 14), it was said: "The extension agreement between the grantee and the mortgagee, without the knowledge and assent of the mortgagor, bars the present suit against the latter. . . When a grantee in a deed assumes and agrees to pay a mortgage on the property conveyed, he takes upon himself the burden of the debt or claim secured by the mortgage and as between himself and his grantor he becomes the principal and the latter merely a surety for the payment of the debt. The mortgagee is not bound by such an agreement unless he assents to it. But when, with knowledge of such an agreement, he enters into an independent stipulation on his own account with the grantee, whereby he obtains a new obligation running directly to himself on the footing that the grantee becomes principal, then in the absence of special conditions he is held to have recognized and become bound by the relation of principal and surety existing between the mortgagor and the grantee. By the agreement with the mortgagee in the case at bar the grantee agreed to pay the debt and she became the principal debtor. It follows that the agreement for extension of time of payment given to the grantee operated to discharge the mortgagor as original debtor, now become surety." For other cases following the general rule quoted above, see Gilliam *v.* McLemore, 141 Miss. 253 (106 So. 99, 43 A. L. R. 79, notes); Maulitz *v.* Jones, 222 Ala. 609 (133 So. 701; Insley *v.* Webb, 122 Wash. 98 (209 Pac. 1093, 41 A. L. R. 274, 282, notes); Zastrow *v.* Knight, 56 S. D. 554 (229 N. W. 925, 72 A. L. R. 379, 390, notes); Smith *v.* Davis, 67 Colo. 128 (186 Pac. 519); Braun *v.* Crew, 183 Cal. 728 (192 Pac. 531); Realty Mortgage Co. *v.* Moore, 80 Fla. 2 (85 So. 155); Bloss *v.* Gray, 225 Mo. App. 419 (37 S. W. (2d) 975); Citizens Bank *v.* Peters, 179 Minn. 330 (229 N. W. 129).

In this State it is declared in the Civil Code, § 3538: "The contract of suretyship is that whereby one obligates himself to pay the debt of another, in consideration of credit or indulgence, or other

benefit given to his principal, the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." In § 3541, referring to the same subject, it is said: "The form of the contract is immaterial, provided the fact of suretyship exists." The fact of suretyship as thus defined may exist in many forms, and may arise under different circumstances. It is declared in § 3164: "A dissolution puts an end to all the powers and rights resulting from the partnership to the partners, except for the purpose of a general account and winding up the business. As to third persons, it absolves the partners from all liability for future contracts and transactions, but not for the transactions that are past." In § 3188: "After dissolution, a partner has no power to bind the firm by a new contract, or to revive one already for any cause extinct, nor to renew or continue an existing liability, nor change its dignity or its nature." In § 4387: "After the dissolution of a partnership, a new promise by one partner revives or extends the partnership debt only as to himself, and not as to his copartners." Yet this court has held: "Where a partnership is dissolved by the retirement of one of the partners, and the continuing partner agrees to assume the debts of the firm, the retiring partner becomes a surety for his copartner." *Preston* v. *Garrard,* 120 Ga. 689 (48 S. E. 118, 102 Am. St. R. 124, 1 Ann. Cas. 724). This is an apt illustration of the definition of the contract of suretyship expressed in the Civil Code, §§ 3538, 3541, supra. The partners were both liable as principal debtors before dissolution; but after dissolution, while both remain bound for the debt, if one assumes the debt individually, the position of the other will be changed from principal to that of mere surety for the one assuming the debt. So in the instant case A, "the mortgagor," was originally bound as principal to B, "the mortgagee," but when C, "the grantee," assumed the debt to B, as between A and C the latter assumed the position of principal debtor and the former was changed to a mere surety. The consideration for C's assumption of the debt was the property conveyed by A to C. This change of position would not affect B, "the mortgagee," if he did not assent to it. But if afterwards he was informed of the assumption of the debt by C, and extended the time of payment by C without the knowledge of A, this would amount to a recognition of C as the principal debtor, and A would become a mere

surety for the debt. C's assumption of the debt would constitute sufficient consideration to B to support his adoption of the transaction between A and C. The question of suretyship would not be affected by the provision in the extension agreement between B and C that such agreement "is in no wise to be considered a payment of the original debt, and that the force and effect of said note and deed [referring to A's notes and loan deed] is in no wise lessened by anything in this extension contract," A not having assented to such provision in the extension agreement between B and C. If a similar clause had been in the deed from A to C or other valid contract between them, prior to the extension agreement between B and C, it might have made a difference. So, putting aside the form of the transaction, and looking to its substance, under the above-quoted definition of the contract of suretyship, A, under the circumstances set forth in the question propounded by the Court of Appeals, ceased to be principal debtor and became surety only on the original contract as between A, B, and C from the time of the "extension agreement" between B and C. On the basis of the change of relationship between the parties, brought about by individual assumption of the debts of the firm by the retiring partner, this court further held, in *Preston* v. *Garrard,* supra: "A creditor of the partnership, who has notice of the dissolution and of the agreement by the continuing partner to assume the debts, is bound thereafter to accord to the retiring partner all the rights of a surety. Hence if, without his knowledge or consent, the creditor, upon a sufficient consideration, extends the time of payment of the firm indebtedness, the retiring partner is released from the indebtedness, and the creditor must thereafter look only to the firm assets and to the individual assets of the continuing partner." In the opinion notice was taken of the conflict of authority in other jurisdictions, to which reference has hereinbefore been made, and the majority rule was approved. See also *Slone* v. *Chamberlin,* 20 *Ga.* 259. On the same principle, A, having by act of all the parties been converted into a surety, as indicated above, was discharged by the contract of B with C, extending the time of payment of the debt upon a valid consideration without the knowledge or consent of A.

A different result is not required, as contended by the attorneys for the plaintiff in error, by the following provisions of the act of 1924 (Acts 1924, p. 126), called the uniform negotiable-instrument

law: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." "The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to indorse." "A negotiable instrument is discharged: (1) by payment in due course by or on behalf of the principal debtor; (2) by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; (3) by the intentional cancellation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money: (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right." "A person secondarily liable on the instrument is discharged: (1) by an act which discharges the instrument; (2) by the intentional cancellation of his signature by the holder; (3) by the discharge of a prior party; (4) by a valid tender of payment made by a prior party; (5) by a release of the principal debtor, unless the holder's right to recourse against the party secondarily liable is expressly reserved; (6) by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable or unless the right of recourse against such party is expressly reserved." "The person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other persons are 'secondarily' liable." 12 Park's Code Supp. 1926, §§ 4270(6), 4273(1), 4276(1), 4276(2), 4285(3). These provisions of the statute, properly construed, are not exhaustive as to what will discharge a surety, and do not apply to suretyship arising as in the instant case. In *Jones* v. *Owens*, 149 *Ga.* 72 (99 S. E. 121), it was held: "Where A sold a house and lot to B, giving a bond for title to the vendee and taking notes of the latter for the purchase-price, and subsequently transferred these notes to C, and the vendee transferred his bond for title to D, the last named assuming the debt represented by the notes and agreeing to pay the same, an agreement upon the

part of the holder of the notes, made with the transferee of the bond for title for a valuable consideration, consisting in part of giving additional security, that the time of payment should be extended, does not convert B, the purchaser of the property first referred to and the maker of the notes, into a mere security; and the agreement does not operate to release him as a security." There was no elaboration of that ruling in the opinion as delivered. It is apparent that this court in rendering that decision overlooked the provisions of the Civil Code first above quoted, and the older decisions in *Preston* v. *Garrard,* and *Stone* v. *Chamberlin,* supra, with which it is in conflict. That ruling must yield to the older decisions rendered by the entire bench, and on formal request and review it is overruled. The question propounded by the Court of Appeals is answered in the affirmative.          *All the Justices concur.*