W. Sam **EDWARDS, Administrator of the Estate of Marion H. Allen, former Collector of Internal Revenue, Appellant,**

v.

Mrs. Dorothy Dannenberg **GREEN-WALD et al., Appellees.**

No. 14957.

United States Court of Appeals
Fifth Circuit.

Dec. 15, 1954.

Walter Akerman, Jr., Atty., H. Brian Holland, Asst. Atty. Gen., Dept. of Justice, Ellis N. Slack, Sp. Asst. to Atty. Gen., Washington, D. C., for appellant.

Charles M. Cork, Macon, Ga., for appellees.

Before HOLMES, BORAH, and TUTTLE, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal by W. Sam Edwards, administrator of the Estate of Marion H. Allen, former Collector of Internal Revenue for the District of Georgia, from a judgment of the District Court granting a refund of additional income taxes paid by appellees pursuant to deficiencies determined against them by the Commissioner. The tax years involved are 1945 to 1949, inclusive. The deficiencies were determined by the Commissioner by attributing to each of the appellees the income of certain trusts of which they were the settlors and trustees.

The material facts are these: The Dannenberg Company, a Georgia corporation, was, during the period in question, conducting a retail drygoods and department store in Macon, Georgia. It owned a one-half interest in a partnership known as Dannenberg-Greenwald which was independently engaged in the wholesale drygoods business with headquarters also in Macon. On February 1, 1944, The Dannenberg Company, pursuant to appropriate corporate authorization, sold to each of the appellees, Mrs. Dorothy Dannenberg Greenwald and Walter F. Dannenberg, a $30,000 interest in the Dannenberg-Greenwald partnership in consideration for which they each gave their personal note for $30,000 payable on demand and bearing interest at five per cent (5%) per annum. The sale agreements contemplated that Mr. Dannenberg place the interest so purchased in separate trusts for each of the three minor children of his son Joe W. Dannenberg, and that Mrs. Greenwald also place her interest in the partnership in separate trusts for each of her three minor children. The trusts so formed were to contribute their respective interests to a new limited part-

nership, also to be known as Dannenberg-Greenwald. The certificates of interest received by appellees in the limited partnership were to be assigned by them, or they were to cause them to be assigned by the proposed trusts, to The Dannenberg Company as security for the payment of the notes. Should the principal or interest of the notes fail to be paid upon demand The Dannenberg Company reserved the power to sell the certificates and the partnership interests which they represented and apply the proceeds to the liquidation of the debt.

The six trusts referred to in the agreement of sale were executed on the same day, February 1, 1944. They each provided: That the trustee in his representative capacity assumed the payment of one-third of the indebtedness contracted by the donors to The Dannenberg Company and that the conveyance in trust was made expressly subject to the terms of that contract. The net income of the trusts was to be accumulated until the beneficiary reached the age of twenty-one at which time the assets were to be distributed to him. Should the beneficiary die before reaching the age of twenty-one the assets were to be accumulated until his children reached that age or if he left no children, then his share was to be distributed to his brothers or sisters. In no event were the donors to have any interest in either the assets or the income of the trusts except their legal interest as trustees. The trusts were to be irrevocable. The trust instruments further gave the trustees authority to invest and reinvest the net income and authorized the trustees to become limited partners in Dannenberg-Greenwald by contributing thereto the assets of the trusts. They were also directed to secure the notes given The Dannenberg Company by pledging the certificates of interest in Dannenberg-Greenwald as collateral.

On the same day that appellees executed separate trusts for each child the trusts became limited partners in Dannenberg-Greenwald, certificates of capital contribution were issued to the trusts and were pledged in writing with The Dannenberg Company to secure the notes of Mr. Dannenberg and Mrs. Greenwald. The notes given by appellees to The Dannenberg Company were paid, the last payment by each trust having been made September 26, 1949.

The Commissioner determined deficiencies against appellees for the taxable years involved as a result of attributing to each of them the income of the six trusts from their interests as limited partners in the partnership, Dannenberg-Greenwald. The deficiencies determined against them were paid by appellees and timely claims for refund were filed, and thereafter the instant suits for refund were brought in the District Court.

The sole question for our determination is whether the trust income for the tax years in question was taxable to the appellees, the settlors of the trust, to the extent that it was used to pay off the notes given The Dannenberg Company for the purchase price of the partnership interests.

The government, citing Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, and Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390, is here insisting that under the provisions of Section 22(a)[1] and 167

---

1. Section 22(a) of the Internal Revenue Code provides:

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

(a) (2) [2] of the Internal Revenue Code, 26 U.S.C.A., taxpayer-settlors are taxable upon the income of the six trusts established by them to the extent that such income might have been used for the payment of their personal indebtedness. We do not at all agree.

In Douglas v. Willcuts, supra, the taxpayer created a trust, pursuant to an order of the state court, with his divorced wife as beneficiary. This arrangement was made in lieu of alimony. It was held that the income of the trust was nevertheless taxable to the taxpayer-settlor since he received the benefit of that income by the discharge of his legal obligation to support his former wife and thus enjoyed the benefit of the income as though he had personally received it. In reaching this conclusion the Court said [296 U.S. 1, 56 S.Ct. 63] that "the creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered." It was "as though he had received the income personally and had been required by the decree to make the payment directly."

In Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390, the Supreme Court reversed the Court of Appeals for the Second Circuit, Per Curiam, on the authority of Douglas v. Willcuts, supra. As appears from the opinion of the Court of Appeals [3] and the Board of Tax Appeals [4] Mrs. Blumenthal was indebted to a bank in the amount of $33,-000 upon a demand note and had pledged as security, three thousand shares of stock worth approximately $300,000. It was stipulated that the bank's custom was to first sell the stock in the event of default before seeking to enforce payment from the maker. Mrs. Blumenthal transferred the three thousand shares, subject to the pledge, in trust impressed with the obligation that the trustee pay her note to the bank out of accumulated dividends as received. The Board of Tax Appeals, in holding the taxpayer taxable upon the trust income, rejected the taxpayer-settlor's contention that as a practical matter there was no likelihood of demand for payment of her indebtedness owing to the large collateral securing her note.

We are of the clear opinion that neither the Willcuts case nor the Blumenthal case is controlling here. In the Blumenthal case the obligation of taxpayer which was paid by the trust was incurred prior to and wholly independently of the establishment of the trust and the settlor was to receive or participate in the income from the trust after the indebtedness was repaid. While in the instant case the indebtedness of the trustees individually was incurred contemporaneously with the establishment of the trusts and was incurred solely for accommodation of the trust and under the trust instruments no benefit or right to receive income was reserved to the trustees as individuals. This being the situation it follows that the trustees' payment of this indebtedness due The Dannenberg Company simply operated to increase the corpus of the trusts from which neither of the trustees individually could receive either income or corpus.

In the trust instruments here involved the trustees assumed primary responsibility for the discharge of the notes. The only liability remaining in appellees was a contingent one to pay them should the trusts fail to do so. This court, in Hays' Estate v. Commissioner, 181 F.2d 169, 171, held there was no reservation of income in a settlor where such settlor placed mortgaged land in trust with the requirement that the mortgage indebted-

2. Section 167(a) (2) provides in substance that the grantor of a trust must include in computing his net income any part of the trust income which may be distributed to him in his discretion or the discretion of any person not having a substantial adverse interest to him in such distribution.

3. 76 F.2d 507.

4. 30 B.T.A. 591.

ness be paid from income of the trust. It was declared in that case: "It is not a general or indefinite benefit but a pecuniary benefit that is necessary for a transaction to constitute a reservation of income, and in this case no pecuniary benefit resulted to the decedent by the trustee's payment of the mortgage notes. A pecuniary benefit means an increase in one's net worth by the receipt of money or property. The payment of the mortgage notes did not and could not increase the decedent's net worth; she received no money; she received no property; none of her property was thereby enhanced in value or released from liens or encumbrances. The payment of the mortgage debts resulted in pecuniary benefit to the trust alone, in that the net worth of its land was increased to the extent of the payments made. There was no legal obligation upon the decedent to discharge this debt except in case of a deficiency being due after there had been a sale of the land upon foreclosure of the mortgage."

The appellant insists, however, that Hays' Estate v. Commissioner, supra, is distinguishable in that the Mississippi law there applied is different from the law of Georgia. In that case we held that when the trustee accepted the trust he became primarily liable for the debts and the mortgagor became a surety with all the consequences flowing from the relation of suretyship. We do not perceive the law of Georgia to be different. The Georgia cases [5] merely require assent on the part of the mortgagee to the assumption of the primary obligation by the grantee of the mortgagor before the mortgagor is released from primary liability and becomes a surety. The Mississippi rule is to the same effect.[6] The trial judge found that all the transactions involving these trusts were entered into with full knowledge and assent on the part of The Dannenberg Company. This finding is adequately supported by evidence of the close relationship of the parties and the nature of the transaction coupled with acceptance of payments by The Dannenberg Company from the trusts.

The judgment below was right. It is affirmed.

5. Stapler v. Anderson, 177 Ga. 434, 170 S.E. 498; Alropa Corp. v. Snyder, 182 Ga. 305, 185 S.E. 352; Wrenn v. Massell Realty Co., 49 Ga.App. 418, 176 S.E. 60; Nelson v. National Life & Accident Ins. Co., 51 Ga.App. 684, 181 S.E. 202.

6. In Gilliam v. McLemore, 141 Miss. 253, 106 So. 99, 106, 43 A.L.R. 79, the Supreme Court of Mississippi said: "* * * We think it is absolutely sound in law to hold that there must be an acceptance by the mortgagee of the proposition as made by the grantee on the terms and under the conditions of the proposition, and that the acceptance must take place before the relation of the parties has been changed, with reference to the subject-matter, to the injury of the grantee. As we stated in the original opinion, there is a line of authority which holds that, upon the assumption of the mortgage debt by accepting a deed containing a clause of assumption, the grantee becomes primarily liable without notice to the mortgagee. But we declined to follow this line of decisions, and held that acceptance and notice was necessary to create the relation of primary debtor between the subsequent grantee and the mortgagee. * * *"