25427.   JOBSON *v.* CALDWELL, executor, *et al.*

DECIDED JULY 10, 1936.

*Durwood T. Pye,* for plaintiff in error.

*Augustine Sams, Grigsby H. Wotton,* contra.

STEPHENS, J.   H. C. Caldwell and others, as executors of W. T. Ashford, brought an action against Philip N. Jobson on a series of monthly notes aggregating $620, which were dated June 11, 1920, and were alleged to have been secured by a conveyance to Ashford of described real estate. The prayer was for judgment on the notes and a special lien on the land. The defendant answered that the notes sued on were part of a series aggregating $620 which he executed to J. B. Jobson, together with a security deed of the same date, for the purpose of obtaining a loan of $500 from W. T. Ashford, and the notes and security were transferred to Ashford by deed dated June 11, 1920; that the transfer to J. B. Jobson was for the purpose of evading the usury laws, and the notes included, in addition to the principal sum of $500, $120 as

interest; that the lawful interest at 6 per cent to be added in on monthly notes on a loan of $500 for 36 monthly (payments) would be $90, and the addition of $30 included in the notes was usurious, that by the 10 monthly payments of $17 each on the loan, the principal was reduced to $359.20 instead of $450 as set out in the petition, a computation being attached as an exhibit, and $90 of the sum sued for was usurious; that the property given as security was transferred to J. B. Jobson by warranty deed of July 19, 1926, subject to an indebtedness of $3250 in favor of the Lewis State Bank and a $500 loan in favor of W. T. Ashford, J. B. Jobson assuming and agreeing to pay said indebtedness, and the defendant thereafter became a surety on the notes; that on May 27, 1930, J. B. Jobson renewed the loan with the Lewis State Bank, and at the instance of J. B. Jobson, Ashford executed a subordination agreement releasing the property for the purpose of renewing the bank loan; that on June 11, 1930, Ashford by quit-claim deed to J. B. Jobson released a certain portion of the property; that in signing a subordination clause Ashford destroyed the security of the existing loan, and thereby relieved the defendant of any liability. By an amendment the defendant alleged that the making of the notes for $620 and the security deed to J. B. Jobson was at the direction of Ashford, that he might evade the usury laws and make a loan of $500 to the defendant.

The evidence in so far as material to the questions now presented was substantially as follows: Deed of May 27, 1920, from P. N. Jobson to Lewis State Bank to secure a debt of $3250, due five years from date, conveying the land described in the plaintiff's petition. A deed of June 11, 1920, from P. N. Jobson to J. B. Jobson, to secure a series of notes aggregating $620, conveying the same land, subject to the loan deed in favor of Lewis State Bank. A deed from J. B. Jobson to W. T. Ashford, in consideration of $500, dated June 11, 1920, and quitclaiming the same land. A warranty deed from P. N. Jobson to J. B. Jobson, conveying the same land dated June 19, 1926, and reciting: "This deed is made subject to a loan deed in favor of Lewis State Bank, dated May, 1920, for $3250 and maturing May, 1930; also a loan of $500 in favor of W. T. Ashford." A deed from W. T. Ashford to J. B. Jobson, dated June 11, 1930, quitclaiming 13 lots and an angular tract, being a part of the land described in plaintiff's

petition. A subordination agreement in which Ashford agreed that a new loan deed to be given by J. B. Jobson to Lewis State Bank, in renewal of the P. N. Jobson loan, and conveying the same property except 13 lots, should be superior to the title held by Ashford except as to 13 lots.

A. C. Corbett testified that he handled a transaction between W. T. Ashford and J. B. Jobson with reference to some property in DeKalb County, "at a time when a loan was made. . . The loan was made by Ashford to J. B. Jobson about 1920, and I think the money was obtained by Philip Jobson. . . About that time I handled several transactions for Mr. Ashford. . . Whatever payment was made for those notes by Mr. Ashford was a payment made in the purchase of the notes. The notes had already been executed some time previously, and they were later turned over to Mr. Ashford. . . When they were transferred to Mr. Ashford he paid me the agreed consideration for the transfer. That this was a puchase from J. B. Jobson seems to be the form of the transaction. I am testifying about that from the appearance of these papers, without any recollection of the facts. . . The form of the transaction appears to be a discount by Ashford of notes signed by Philip Jobson and J. B. Jobson. As to what was the substance of the transaction, that is, whether Philip Jobson or his father was borrowing the money, my recollection is that the conversations I had about the matter were with Philip Jobson. I may be in error and won't say positively about that. My best recollection is that the matter was handled with me by Philip Jobson. I was well acquainted with both Philip Jobson and his father, and more than likely I had conversations with both of them."

Philip N. Jobson, the defendant, testified: "I borrowed from W. T. Ashford the money involved in this case. I myself received the $500 from A. C. Corbett by check on or about June 11, 1920. I myself applied directly to A. C. Corbett, who was representing Mr. Ashford in this transaction, for the loan. Mr. Corbett had been representing him for some time previously, and he represented him subsequently, and I applied to Mr. Corbett for the loan of $500 which was needed to complete the payment for the property. . . This money was obtained for that purpose, and it was to be my money and not my father's money. From the loan

I received $475, and the balance was paid to Mr. Corbett for examining the title. The money from the loan I used myself to complete the purchase of the property. I did not get $620, the amount of these notes; all I got was $500."

The court on motion directed a verdict in favor of the plaintiff. The defendant moved for a new trial on the general grounds, and a ground which alleged that "the court erred in directing a verdict for plaintiff. This direction was error because, there were issues of fact in the case for the determination of the jury." The motion was overruled, and the defendant excepted.

■ The plaintiff in error contends, that, in the dealings between him, his father, and Ashford, his position as debtor on the notes sued on was altered to that of a surety, and that he was released from liability when Ashford released a portion of the land which he held as security for the debt. This contention is based on the supposition that J. B. Jobson assumed payment of the Ashford loan. The deed from Philip N. Jobson to J. B. Jobson conveyed the land "subject to" the Ashford loan. This language usually and properly negatives the assumption of an encumbrance. Nor was there any evidence to show that Ashford accepted J. B. Jobson as his debtor instead of the plaintiff in error. A further contention is that Philip N. Jobson was discharged from personal liability on the debt, because "he had the right to have the land looked to by Ashford as the principal fund for the payment of the debt; and that when Ashford released land more than sufficient to discharge the debt from the lien which he then had on said land, Philip N. Jobson was released from personal responsibility, at least to the value of the land so deeded by Ashford." Alienation of part of the security does not operate as a payment of any part of the secured debt. If done without the consent of the debtor, he could, on payment of the debt, recover from the alienee the security aliened. The trouble here is that Philip N. Jobson omitted to have his father J. B. Jobson assume the Ashford loan in the warranty deed made by him to his father. *Nelson* v. *National Life &c. Co.,* 51 *Ga. App.* 684 (181 S. E. 202). In *Stapler* v. *Anderson,* 177 *Ga.* 434 (170 S. E. 498) and *Rand* v. *Massell,* 49 *Ga. App.* 418 (176 S. E. 60), there was an assumption of the debt by the transferee of the security.

■ As to the question of usury not being submitted to the

jury, the plaintiffs contend that it can not be considered, because the exception to the directed verdict is insufficient. It is a sufficient assignment of error to say that the court erred in directing a verdict because there were issues of fact for the determination of a jury. *Harrison* v. *Neel Gap Bus Line Inc.*, 51 *Ga. App.* 120 (179 S. E. 871). The cases of *Sheftall* v. *Johnson*, 171 *Ga.* 890 (157 S. E. 94), *Gilmore* v. *Continental Ins. Co.*, 50 *Ga. App.* 598 (179 S. E. 150), *Cody* v. *Citizens & Southern National Bank*, 50 *Ga. App.* 210 (177 S. E. 513), and *Bosworth* v. *Nelson*, 172 *Ga.* 612 (158 S. E. 306), are distinguishable. Considering the coincidence in dates of the papers in the original transaction with Ashford, together with the testimony of A. C. Corbett and Philip N. Jobson, it can not be said as a matter of law that the transaction was a sale of notes, and not a loan. It was therefore error to direct the verdict.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*